Argued and submitted May 3, decision of the Court of Appeals reversed; judgment of the circuit court affirmed August 5, 1993

STATE OF OREGON,
*Petitioner on Review,*

*v.*

TREVOR SHANE MILLER,
*Respondent on Review.*

(CC 10-90-09150; CA A68351; SC S39786)

855 P2d 1093

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent on review.

FADELEY, J.

## FADELEY, J.

In this criminal case, we consider questions related to sentencing guidelines. In a single indictment, crimes were alleged to have occurred on August 14, August 26, and September 2, 1990. The counts alleged that multiple crimes were committed on each of the three separate dates. Defendant pleaded guilty: to raping, repeatedly sodomizing, and sexually abusing a woman in the course of burglary of a residence on August 14; to attempted rape and sexual abuse of another woman in the course of burglary of another residence committed with the intent to commit forcible rape therein on August 26; and to burglary and attempted rape of a third woman at a third residence on September 2, 1990. Sentences of 19 months and 38 months were imposed for two of the August 14 crimes, and a 41-month sentence was imposed for the August 26 burglary. Those three sentences were to run consecutively and thus totaled 98 months. Other sentences were imposed to run concurrently. None of the sentences was imposed as a departure sentence, *i.e.*, all were imposed using presumptive sentences from the sentencing guidelines grid, displayed as the appendix to this opinion.

To determine the presumptive sentence, a judge uses the grid to take into account the two factors of (1) relative severity of various crimes and (2) relative extent of a defendant's criminal history. The more severe the crime, the longer the presumptive sentence; likewise, the more extensive the criminal history, the longer the presumptive sentence. Criminal history includes increases in length of sentences based on whether other crimes that a defendant has committed were or were not crimes against a person. The longest sentences are for the most serious crimes against persons committed by a defendant with a criminal history of three or more felonies against persons, as a review of the grid makes clear.

The 41-month sentence, imposed for the most serious of the August 26 crimes, was possible under the guidelines only if defendant's criminal history scores were increased for sentencing of the August 26 series of acts by reason of the convictions on the August 14 series of acts. Defendant contends that the lengths of the sentences imposed do not comply with the sentencing guidelines in two

separate respects and that, therefore, the length of prison term imposed violates the guidelines.

The issues before us are:

(1)   whether the six convictions entered in the August 14 series of criminal acts can be counted by the sentencing court, sitting in a single sentencing proceeding, to determine defendant's criminal history score for use in calculating the sentence to be imposed for convictions on the separate August 26 and September 2 series of criminal acts; and

(2)   whether the total length of the three consecutive sentences imposed exceeds the maximum length permitted by guidelines rules specifically applicable to consecutive sentences.

The Court of Appeals reversed defendant's sentences on the first issue and remanded the case to the trial court for resentencing. The Court of Appeals relied on its decisions in *State v. Bucholz*, 113 Or App 705, 834 P2d 456 (1992), and *State v. Seals*, 113 Or App 700, 833 P2d 1344 (1992), to overturn the trial court's application of convictions from the August 14 series of acts to increase defendant's criminal history scores for the purpose of calculating presumptive sentences for the later series of acts.[1] On the state's petition for review, we reverse the decision of the Court of Appeals.

## CRIMINAL HISTORY — COUNTING PRIOR CONVICTIONS

In *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), a case involving two separate indictments for two separate series of criminal acts, this court relied on the text of a guideline rule and reversed the Court of Appeals in relation to the first issue stated above.

The guideline construed in *Bucholz* and applicable here came about in the following manner. In 1987, the legislature enacted Oregon Laws 1987, chapter 619, which required the State Sentencing Guidelines Board to adopt

---

[1] Because of its disposition of the criminal history issue, the Court of Appeals did not reach the "200 percent rule" issue (discussed below) or any other issue related to consecutive sentences in this case.

sentencing guidelines for all offenses punishable by imprisonment in state prisons.

The Criminal Justice Council was required to develop and propose draft guidelines to the Sentencing Guidelines Board. Section 2(3) of chapter 619 provides:

"In developing the sentencing guidelines the council shall take into consideration factors relevant to establishment of appropriate sentences, including severity of the offense, criminal history of the offender, aggravating and mitigating circumstances, performance under probationary supervision, prevention of recidivism, possibility of reformation or deterrence and the effective capacity of state and local correctional facilities and other sentencing sanctions available."

Those guidelines were proposed and have, with some amendments, been adopted by the legislature. *See, e.g.*, Or Laws 1989, ch 790, § 98 (detailed in this court's decision today in *State v. Bucholz, supra*). Legislative adoption, not just board promulgation, is presently required by law for any sentencing guideline. Or Laws 1989, ch 790, §§ 94, 94a.

The operation of the guidelines is described in detail in our recent case of *State v. Davis*, 315 Or 484, 486-88, 847 P2d 834 (1993), and we do not repeat it here. Suffice it to say that, absent a departure, a history of previous criminal convictions increases the sentence that a court is required to presume is the correct sentence that the court must impose for a later conviction. The length of sentence depends on whether a given conviction is or is not counted as part of a defendant's criminal history when sentence is being imposed on another conviction. We apply the decision of this court in *State v. Bucholz, supra*, to determine whether certain of defendant's convictions are to be counted as criminal history in this case.

■■ We recognize that the two separate series of acts in *Bucholz* were alleged in two separate indictments, not one indictment as in the present case. But, in *Bucholz*, all convictions from both indictments were sentenced in one session of court and on the same day, just as all convictions from the three series of criminal acts here were sentenced in one session of court. The happenstance of whether charges are made by separate indictments or together in one indictment does not alter the effect or the analysis of the legislatively

adopted criminal history rule that we described in *Bucholz*. We hold that the rule for calculating criminal history, OAR 253-04-006(2), applies equally where acts from unrelated criminal episodes are combined in one proceeding and where sentences for the separate, unrelated acts are separately imposed, albeit in the same session of court and on the same day, regardless of whether the proceeding arises under one indictment or under two or more. The Court of Appeals erred when it reversed the circuit court, on the ground that the latter court had considered the August 14 series of acts in sentencing defendant on the August 26 and September 2 series of acts.

## CONSECUTIVE SENTENCES — THE 200 PERCENT RULE

■ We turn to the second issue — legal propriety of the consecutive sentences totaling 98 months' incarceration in state prison. The legislature has designated the guidelines as the source of authority for maximum consecutive sentences. ORS 137.121 in part provides:

> "[T]he maximum *consecutive* sentences which may be imposed for felonies committed on or after November 1, 1989, whether as terms of imprisonment, probation or both, shall be as provided by rules of the State Sentencing Guidelines Board." (Emphasis added.)

OAR 253-12-020(2)(a) and (b), rules of that board, provide:

> "(a) Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:
>
> "(A) the presumptive incarceration term for the primary offense, as defined in OAR 253-03-001 (17); and
>
> "(B) up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively.
>
> "(b) The total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the maximum presumptive incarceration term of the primary sentence except by departure as provided by OAR 253-08-007."

The longest single-count sentence imposed by the trial court in this case was 41 months, for burglary of an occupied dwelling with intent to commit forcible rape or sodomy therein. This crime of defendant's ranked highest on the crime seriousness scale. OAR 253-03-001(17) defines the "primary offense" as the offense of conviction with the highest crime seriousness ranking. Under the quoted rule, the maximum incarceration term through use of consecutive sentences would be double, or "200 percent" of the 41-month term, for a total of 82 months, not the consecutive terms totaling 98 months imposed by the trial court.

Defendant contends that the 200 percent rule applies. The state argues that the 200 percent rule does not apply because that rule, properly read, limits only consecutive sentences arising from a single episode of criminal activity, whereas the sentences in this case arise from three separate episodes. There are no words in the rule limiting the applicability of the 200 percent rule, except where it is displaced by imposition of a departure sentence. OAR 253-12-020(1)(b). Its text contains no exceptions and no conditions or qualifications.

The state does not point to the text of the 200 percent rule to support its argument. The state contends that the legislature, in approving the 200 percent rule, must have had in mind that the rule would apply only to offenses arising from criminal charges from a single criminal episode because, at the time that the 200 percent rule was proposed by the council, promulgated by the board and in the process of being adopted by the legislature, only single-episode criminal acts could have been joined in one indictment or criminal case. ORS 132.560(1) (1987). The state notes that ORS 132.560(1) was amended by Oregon Laws 1989, chapter 842, section 1, to broaden the number of instances in which separate episodes of criminal activity could be joined in one indictment and trial. The state then urges us to conclude that the 1989 legislature, in adopting the 200 percent rule, intended that the rule be applied only to sentences for related crimes based on a single criminal episode. The state then argues that the amendment to the joinder statute, ORS 132.560 (enacted as Oregon Laws 1989, chapter 842, HB 2251), allowed many more charges to be joined in one indictment and case and to be

tried together, as was done in the present case, but that the 200 percent rule remained limited to crimes committed in a single episode.

Context does not contradict the state's argument. The Sentencing Guidelines Implementation Manual provides examples for applying the 200 percent rule where several offenses are combined in one case. It states:

> "Subsection (b) [of OAR 253-12-020(2)] prescribes the limits on the total incarceration term for consecutive sentences imposed in a single case. The incarceration term in such a case may not exceed twice the maximum presumptive incarceration term of the primary sentence for the primary offense.

> "EXAMPLE: An offender classified in Criminal History Category F is convicted of three separate Burglary I convictions for burglaries of occupied dwellings (Crime Category 8). The sentencing judge selects one of the Burglary I convictions to serve as the most serious crime of conviction. For that primary offense, the sentencing judge imposes the maximum presumptive incarceration term of twenty-four months for grid block 8-F. The base sentence for the other two offenses is sixteen to eighteen months.

> "The sentencing judge, however, is limited by OAR 253-12-020(2)(b) to a total incarceration term of no more than forty-eight months (twice the maximum term of the primary sentence of twenty-four months). Consequently, the sentencing judge may only impose a portion of the incarceration term of the base sentence." Sentencing Guidelines Implementation Manual, Oregon Criminal Justice Council Commentary, 114 (1989).

The manual provides another example to the same effect, as follows:

> "EXAMPLE:

> "Fact Pattern. An offender is convicted of three Robbery I offenses. The offender's criminal history classification is Criminal History D.

|  |  | "Presumptive Sentence |
|---|---|---|
| "Primary Offense: | Robbery A | 55 months |
|  |  | "Base Sentence |
| "Other Offenses: | Robbery B and C | 36 months |

"If the sentences on all three offenses are imposed consecutively and the judge does not identify grounds for any departure, the maximum incarceration term for the consecutive sentences is 110 months. OAR 253-12-020(2)(b)." *Id.* at 120 (emphasis in original).

Both examples would apply if all of the burglaries or all of the robberies arose from single criminal episodes.

The inference that the state urges may also be derived from the history of changes to ORS 132.560 even though the legislature considered and adopted the liberal joinder bill (HB 2251 (1989), present ORS 132.560), and the sentencing guidelines bill (HB 2250 (1989)) in the same legislative session and through hearings in the same committees. Discussion in the legislative history of both of those bills indicates that the relevant committee of the legislature was, while discussing HB 2250, aware of HB 2251 and of its relation to the subject of HB 2250.[2] But the legislature did not alter the 200 percent rule to apply it to sentencing on separate criminal episodes.

Also relevant to our discussion is another guideline rule relating to consecutive sentences, OAR 253-12-030(1), which provides:

"When a sentence is imposed consecutively to a sentence *imposed in a prior proceeding*, the incarceration term of the new sentence is added to the remaining incarceration term of the prior sentence. If any sentence includes a prison term, the entire incarceration term of all sentences shall be served in prison." (Emphasis added.)

Thus, the 200 percent rule is not applied if there were separate sentencings for separate criminal episodes.

[2] In the discussion of HB 2251, the bill providing for more liberal joinder of separate crimes within one indictment, Senator Cohen asked what impact the sentencing guidelines would have on the bill. Witness Dale Penn, Marion County's District Attorney, replied that the focus of the sentencing guidelines was the concept of a single judicial proceeding and that HB 2251 encouraged the joinder of all charges into a single judicial proceeding and thus was "consistent with sentencing guidelines." Tape Recording, Senate Committee on Judiciary, June 7, 1989, Tape 227, Side B at 151-176. Sometime thereafter, during discussion of HB 2250, the sentencing guidelines bill, witness Kathleen Bogan informed Committee Chair Cohen and the senators on the Judiciary Committee that if a change in current charging law is adopted, that change could have an effect on calculation of the criminal history score. Tape Recording, Senate Judiciary Committee, June 29, 1989, Tape 255, Side A at 328 to end.

■ Major purposes behind the guidelines promote state-wide uniformity in sentencing while according the maximum latitude possible within the overall guidelines system to the individual judge's sentencing discretion. Or Laws 1987, ch 619, § 2(2)(c). Those purposes are contradicted and not forwarded if the length of a sentence may be manipulated either by combining in one hearing, or separating in two or more hearings, a defendant's various crimes. That sort of manipulation is minimized by limiting application of the 200 percent rule to a single episode. The 200 percent rule does not apply to sentences derived from different criminal episodes.

■ Defendant separately claims error under OAR 253-12-020(2)(a)(B), because the consecutive sentences of 19 months and 38 months imposed for the additional offenses beyond the primary offense are taken from column G of the guidelines grid and not from column I of the grid as subsection (B) of that rule requires. Wording in that subsection requires that column I be used for additional consecutive sentences, without exception. The difference between an 8-H presumptive sentence of 19 months and an 8-I presumptive sentence of 18 months is one month.[3] No specific mention of the column I error was made at trial. The trial court pointed out that it was using column G. Defendant did not object on that basis. Error was not preserved. However, the provision calling for use of column I is part of the section containing the 200 percent rule, which we have held is applicable only to consecutive sentences arising from a single criminal episode. Defendant's claim under subsection (B) is, accordingly, not applicable to the one-month discrepancy even if the asserted error had been preserved at trial.

---

[3] Referring to the provisions of OAR 253-12-020(1)(a)(B), the guidelines manual states:

"Paragraph (B). The incarceration term for every other offense being sentenced consecutively is determined from the I Column on the Criminal History Scale. Sentences for these additional offenses may be described as 'base sentences' because the offender's criminal history is not used to determine them.

"This process for calculating incarceration terms permits an appropriate consideration of the offender's criminal history record without distorting the just desserts orientation of the guidelines. The offender's criminal history record is properly reflected in the incarceration term associated with the primary offense. The significance of the offender's criminal history, however, is not multiplied for each additional offense because it is already reflected in the presumptive sentence for the primary offense." Sentencing Guidelines Implementation Manual, Oregon Criminal Justice Council Commentary, 114 (1989).

In summary, use of criminal history that is enhanced by counting convictions from the first series for purposes of determining the presumptive sentences to be imposed on the second and third unrelated series of convictions is appropriate. The 200 percent rule does not apply to sentences derived from different criminal episodes. The error in failing to use column I for a second consecutive sentence arising from a single criminal episode was not preserved.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

# APPENDIX

## SENTENCING GUIDELINES GRID
### - APPENDIX -

**CRIMINAL HISTORY SCALE**

CRIME SERIOUSNESS SCALE

| | | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|---|
| MURDER | 11 | 225-269 | 196-224 | 178-194 | 149-177 | 149-177 | 135-148 | 129-134 | 122-128 | 120-121 |
| MANSLAUGHTER I, ASSAULT I, RAPE I, ARSON I | 10 | 121-130 | 116-120 | 111-115 | 91-110 | 81-90 | 71-80 | 66-70 | 61-65 | 58-60 |
| RAPE I, ASSAULT I, KIDNAPPING I, ARSON I, BURGLARY I, ROBBERY I | 9 | 66-72 | 61-65 | 56-60 | 51-55 | 46-50 | 41-45 | 39-40 | 37-38 | 34-36 |
| MANSLAUGHTER II, SEXUAL ABUSE I ASSAULT II, RAPE II, USING CHILD IN DISPLAY OF SEXUAL CONDUCT, DRUGS-MANUFACTURE/DEL, COMP PROSTITUTION, NEG. HOMICIDE | 8 | 41-45 | 35-40 | 29-34 | 27-28 | 25-26 | 23-24 | 21-22 | 19-20 | 16-18 |
| EXTORTION, COERCION, SUPPLYING CONTRABAND, ESCAPE I | 7 | 31-36 | 25-30 | 21-24 | 19-20 | 16-18 | 180/90 | 180/90 | 180/90 | 180/90 |
| ROBBERY II, ASSAULT III, RAPE III, BRIBE RECEIVING, INTIMIDATION, PROPERTY CRIMES (more than $50,000), DRUG POSSESSION | 6 | 25-30 | 19-24 | 15-18 | 13-14 | 10-12 | 180/90 | 180/90 | 180/90 | 180/90 |
| ROBBERY III, THEFT BY RECEIVING, TRAFFICKING STOLEN VEHICLES, PROPERTY CRIMES ($10,000-$49,999) | 5 | 15-16 | 13-14 | 11-12 | 9-10 | 6-8 | 180/90 | 120/60 | 120/60 | 120/60 |
| FTA I, CUSTODIAL INTERFERENCE II, PROPERTY CRIMES ($5,000-$9,999), DRUGS-CULT/MANUF/DEL | 4 | 10-10 | 8-9 | 120/60 | 120/60 | 120/60 | 120/60 | 120/60 | 120/60 | 120/60 |
| ABANDON CHILD ABUSE OF CORPSE, CRIMINAL NONSUPPORT, PROPERTY CRIMES ($1,000-$4,999) | 3 | 120/60 | 120/60 | 120/60 | 120/60 | 120/60 | 120/60 | 90/30 | 90/30 | 90/30 |
| DEALING CHILD PORNOGRAPHY, VIOLATION OF WILDLIFE LAWS, WELFARE FRAUD, PROPERTY CRIMES (less than $1,000) | 2 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 |
| ALTERING FIREARM ID, HABITUAL OFFENDER VIOLATION, BIGAMY, PARAMILITARY ACTIVITY, DRUGS-POSSESSION | 1 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 | 90/30 |

- In white blocks, numbers are presumptive prison sentences expressed as a range of months.
- In gray blocks, upper number is the maximum number of custody units which may be imposed; lower number is the maximum number of jail days which may be imposed.