Argued and submitted February 12, affirmed April 14, petition for review
denied August 18, 2010 (348 Or 669)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FLOYD MATHEW MAYES,
*Defendant-Appellant.*

Multnomah County Circuit Court
950331728; A138206

229 P3d 628

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Sercombe, Presiding Judge, and Rosenblum, Judge, and Breithaupt, Judge pro tempore.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendant was convicted in 1996 of various crimes, including two counts of felony murder and one count of second-degree assault. On the second-degree assault conviction, defendant was sentenced to 34 months' imprisonment, to run consecutively to his 240-month sentences for murder. The court entered a judgment and then a corrected judgment that described the sentence for second-degree assault as a "presumptive" sentence pursuant to grid block 8-C of the sentencing guidelines. In 2007, defendant moved, pursuant to ORS 138.083(1), to correct various errors in the corrected judgment, including (1) the failure to merge the two felony murder convictions; and (2) a violation of the "shift-to-I" rule[1] regarding the "presumptive" 34-month prison term. After a hearing on the motion, the trial court entered a second corrected judgment that merged the two murder convictions and described the sentence for second-degree assault as a departure sentence under grid block 8-I rather than a "presumptive" sentence under grid block 8-C.

On appeal, defendant contends that the trial court denied him the right to allocution—that is, the right to be heard personally—at the hearing on his motion to correct the judgment. Defendant further argues that the trial court, in the process of correcting his "presumptive" sentence, committed a new error by imposing a departure sentence based on its own factual findings, in violation of his Sixth Amendment rights as enunciated in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). We reject both arguments and affirm.

We begin with defendant's *Blakely*-based argument, because it informs our discussion of his contentions regarding allocution. As noted above, the original judgment and the first corrected judgment described defendant's sentence for second-degree assault as a "presumptive" sentence based on

[1] The "shift-to-I" rule applies when a defendant is sentenced for multiple felonies in the same proceeding. In that event, the defendant's true criminal history score is used in assessing the grid block for imposing sentence on the primary offense (and any other offenses for which sentences will run concurrently). OAR 213-012-0020(2)(a)(A). For additional offenses for which consecutive sentences will be imposed, the court is required to use the criminal history score "I." OAR 213-012-0020(2)(a)(B).

grid block 8-C of the sentencing guidelines. In response to defendant's contention that the sentence violated the "shift-to-I" rule, the trial court's second corrected judgment instead described the sentence as a "durational departure sentence" under grid block 8-I, listing the reasons for the departure as "tendency to engage in violent conduct," "degree of harm more substantial," and "on post prison supervision at time of offense." The actual term of incarceration remained the same—34 months—as did the period of post-prison supervision (36 months), and the sentence still ran consecutively to defendant's sentence for murder.

■ Defendant's argument on appeal is that the correction regarding his sentence was more than a clerical change to the judgment.[2] In his view, the original "presumptive" sentence was void as a matter of law, which required the court to impose a new, lawful sentence under grid block 8-I of the sentencing guidelines. Consequently, defendant argues, if the court was going to impose an upward departure sentence, it was required to empanel a jury to find any enhancement facts to justify the imposition of that departure sentence. *See* ORS 136.770(1); ORS 136.773; *Blakely*, 542 US at 303-04.

The premise of defendant's argument—that the court initially imposed a void "presumptive" sentence—is incorrect. The transcript from defendant's 1996 sentencing proceedings indicates that the trial court, in fact, imposed an upward departure sentence for second-degree assault under grid block 8-I, which was then mislabeled in the judgment and the first corrected judgment as a "presumptive" sentence. At the 1996 sentencing hearing, the trial court stated its intention to impose a sentence of 34 months' imprisonment under grid block 8-C, but defendant's counsel objected on the ground that the applicable grid block was 8-I. The prosecutor responded that,

> "even if the Court did move to the I column, consistent with defendant's objections in the Assault in the Second Degree, the Court should upward depart *based on the same reasons*

---

[2] ORS 138.083(1) allows a sentencing court "to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment."

*it would use on the Felony Murder count* [defendant's tendency to engage in violent conduct; the degree of harm to the victim; and the fact that defendant was on post-prison supervision at the time of the offense], and additional reason of an antisocial personality disorder to exactly the same sentence."

(Emphasis added.) The trial court stated, "I think that [defense counsel] may be right. I do have to go to the I column." The prosecutor then reiterated his belief that "it would make sense for the Court to use the same upward departure factors, and * * * the additional factor, the antisocial personality disorder found by the [presentence investigation], and *making those findings would accomplish the same sentence that the Court imposed.*" (Emphasis added.)

The trial court agreed with defendant's objection and accepted the prosecutor's recommendation, except as to finding the "additional" departure factor:

"I think you're right, [defense counsel], I do have to go to the I column in the grid, and I thank you for bringing that to my attention.

"It's an 8-C. It goes on sentencing to 8-I. I will continue to impose the 34 months. I will do an upward durational departure, which would actually be six months more [than the 28-month presumptive sentence], *and do an upward departure as I did in the other cases.*"

(Emphasis added.) The court, as noted above, had earlier imposed departure sentences on the felony murder convictions based on "defendant's tendency to engage in violent conduct, the degree of harm in this case, * * * and also that he was on post-prison supervision at the time"—the same factors that are recited in the second corrected judgment.

Based on a review of the record, it is apparent that the departure sentence imposed by the court over a decade ago was simply misdescribed in the judgment and first corrected judgment as a "presumptive" sentence under grid block 8-C. Thus, the second corrected judgment did not impose a different sentence on defendant; it simply made clerical corrections to accurately reflect the sentence that had been imposed earlier, including findings that had already

been made, as discussed above. Contrary to defendant's contention, the trial court had no obligation to empanel a jury before making those clerical corrections to accurately reflect the previously imposed sentence. *See Mullinax and Mullinax*, 292 Or 416, 424, 639 P2d 628 (1982) ("The purpose of an amendment correcting a 'clerical error' is '* * * to make the record speak the truth and conform it to what actually occurred.' " (Quoting *Hubbard v. Hubbard*, 213 Or 482, 487, 324 P2d 469 (1958).).

■ In his other assignment of error, defendant contends that the trial court violated his right to allocution by refusing to let him argue personally at the hearing rather than through counsel. Defendant relies on *State v. Isom*, 201 Or App 687, 694, 120 P3d 912 (2005), in which we held that Article I, section 11, of the Oregon Constitution guaranteed a defendant the right to allocution during a hearing to modify a judgment. According to defendant, the two cases are analogous because here, "[a]s in *Isom*, 'in the process of correcting one error, * * * the judge at the second resentencing hearing made another error * * *. That fact alone demonstrates that defendant could have made a relevant allocution.' 201 Or App at 694."

■ As we have already explained, the trial court did not commit "another error" in the process of correcting the judgment; there was no reason for the trial court to empanel a jury before correcting the judgment. Furthermore, as we recently reiterated in *State v. Rickard*, 225 Or App 488, 491, 201 P3d 927 (2009), "[t]he statutory and constitutional rights to speak at a sentence modification proceeding are not unqualified. An enforceable right extends to changes in a sentence that are 'substantive' as opposed to 'administrative' in character." *See also State v. Riley*, 195 Or App 377, 384, 97 P3d 1269 (2004), *rev den*, 340 Or 673 (2006) ("When the modification is administrative as opposed to substantive, that is, when the modification involves neither disputed facts nor the exercise of judicial discretion but occurs entirely by operation of law, the defendant's absence is not prejudicial."). In this case, the trial court did not make any changes to defendant's sentences that involved disputed facts or the exercise of judicial discretion, and his rights to allocution were not violated.

Affirmed.