Submitted June 17, affirmed December 29, 2011, petition for review denied May 17, 2012 (352 Or 33)

## ERIC VINCENT ORCHARD,
*Petitioner-Appellant,*

*v.*

## Don MILLS,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV080561; A142729

270 P3d 309

Erin Galli and Chilton & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

BREWER, C. J.

---

* Brewer, C. J., *vice* Rosenblum, S. J.

## BREWER, C. J.

Petitioner was convicted of second-degree assault, failure to perform the duties of a driver, and seven counts of felon in possession of a firearm. Petitioner appeals from a judgment dismissing his petition for post-conviction relief arising from those convictions. In two assignments of error, petitioner asserts that (1) the post-conviction court erred in denying relief on the ground that the sentencing court failed to adjust petitioner's criminal history score, as required by OAR 213-012-0020(2)(a)(B); and (2) his trial counsel was inadequate for failing to object to the sentencing court's failure to adjust petitioner's criminal history score. Because the sentencing court correctly applied OAR 213-012-0020(2)(a)(B) in concluding that petitioner's convictions were not part of a single criminal episode, the post-conviction court did not err in dismissing the petition. Accordingly, we affirm.[1]

To prevail on a claim of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must show by a preponderance of the evidence that trial counsel failed to exercise reasonable skill and judgment and that petitioner suffered prejudice as a result. Prejudice occurs if the error had a tendency to affect the result of the prosecution. *Krummacher v. Gierloff*, 290 Or 867, 874, 627 P2d 458 (1981). Similarly, under the Sixth Amendment to the United States Constitution, a petitioner must show that counsel's performance was deficient and that the deficient performance caused actual prejudice to the defense. *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

The following facts are not in dispute. On New Year's Eve, petitioner drove while intoxicated, collided with another car, and caused serious physical injury to the driver of that car. Petitioner then fled the scene of the accident. A short time later, police obtained a warrant to search petitioner's residence and, in that search, seized seven firearms. Petitioner was a convicted felon when the search was conducted.

---

[1] We reject without discussion petitioner's remaining assignment of error.

After a bench trial, the trial court convicted petitioner of the offenses described above. This court affirmed those convictions without opinion. *State v. Orchard*, 215 Or App 702, 170 P3d 1137 (2007). Petitioner then filed this action for post-conviction relief. The post-conviction court dismissed the action; this appeal followed.

Under OAR 213-012-0020(2)(a)(B), when a trial court imposes multiple sentences consecutively, it must "shift to column I" on the criminal history scale for all sentences that are imposed consecutively to the sentence on the primary offense. OAR 213-012-0020(2)(a)(B).[2] However, the "shift-to-I" rule applies only when consecutive sentences are imposed for crimes that arise from a single criminal episode. *State v. Miller*, 317 Or 297, 305-06, 855 P2d 1093 (1993). In *Miller*, the Supreme Court concluded that *former* OAR 253-12-020(2)(b)—which provided that the maximum incarceration period for consecutive sentences is twice the duration of the sentence on the primary offense—does not apply to convictions arising from separate criminal episodes. *Id.* at 302-03. The court determined that, when calculating a defendant's criminal history score for convictions arising from separate criminal episodes, the sentencing court can impose consecutive sentences on those convictions. *Id.* It follows that the "shift-to-I" rule does not apply to convictions stemming from separate criminal episodes. Therefore, the dispositive issue is whether petitioner's convictions arose from a single criminal episode. Under ORS 131.505(4), a "criminal episode" means "continuous and uninterrupted conduct that establishes at least one offense that is joined in time, place, and circumstances that such conduct is directed to the accomplishment of a single criminal objective."[3]

---

[2] OAR 213-012-0020 provides, in part:

"(2)(a) Subject to the provision of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:

"* * * * *

"(B) Up to the maximum incarceration term indicated in the Criminal History Column I for each additional offense imposed consecutively."

[3] "Criminal episode" is a term of art; it can have different meanings depending on the context in which it is used. *See, e.g., State v. Potter*, 245 Or App 1, 6, 260 P3d 815 (2011). To determine whether convictions arise from a single criminal episode for purposes of the imposition of consecutive sentences, we apply the same

On appeal, petitioner contends that his convictions for second-degree assault and failure to perform the duties of a driver arose out of a single criminal episode and that, therefore, his counsel performed inadequately by failing to assert before the sentencing court that it must apply the "shift-to-I" rule in imposing consecutive sentences. We disagree:

> "The general rule for determining whether a defendant who in the course of a single criminal episode violates more than one criminal statute may be punished separately for each violation is that when the conduct was directed to the accomplishment of a single criminal objective, only a single punishment may be imposed. *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979). In [*Cloutier*], the court found that breaking into a dwelling with the intent to steal, and the theft actually committed therein, are acts directed to the accomplishment of a single criminal objective, and so may not be separately punished. An assault premised on reckless conduct does not readily fit the analysis respecting a criminal objective single or multiple. Although the reckless conduct results in serious physical injury, it cannot be said the defendant had a conscious criminal objective to cause the injury. The reckless conduct and its result terminated at the time of the accident. His knowingly leaving the scene without performing the duties required by statute was not part of the reckless activity but was intended to accomplish a separate result; avoidance of responsibility for the assaults. It was proper to sentence for the assaults separate from the charge of failure to perform the duties of a driver involved in an accident."

*State v. Lopez*, 56 Or App 179, 182-83, 641 P2d 596, *rev den*, 293 Or 146 (1982). As in *Lopez*, petitioner's assaultive conduct and his subsequent efforts to evade apprehension for that assault were not directed to the accomplishment of a single criminal objective. Therefore, it was proper to impose consecutive sentences on the assault and failure to perform the duties of a driver charges without applying the "shift-to-I" rule.

Petitioner remonstrates that the "single criminal objective test" set out in *Cloutier* is no longer controlling.

definition that governs our double jeopardy analysis: ORS 131.505(4). *See, e.g.*, *State v. Norman*, 216 Or App 475, 486, 174 P3d 598 (2007), *vac'd on other grounds*, 345 Or 319, 207 P3d 423 (2008).

Instead, petitioner argues, the dispositive test is whether a complete account of the offense of failure to perform the duties of a driver could be given without a complete account of the assault. *State v. Sparks*, 150 Or App 293, 297, 946 P2d 314 (1997), *rev den*, 326 Or 390 (1998). Because that could not be done, petitioner argues, the two incidents were part of a continuous and uninterrupted course of conduct. It follows, petitioner reasons, that the two offenses were part of a single criminal episode, and the "shift-to-I" rule applies to the secondary conviction.

We are not persuaded by that argument. As discussed, ORS 131.505(4) defines a "criminal episode" as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances *that such conduct is directed to the accomplishment of a single criminal objective*." (Emphasis added.) In *Sparks*, where the defendant unlawfully entered and committed crimes in three separate motel rooms, we also focused on the defendant's criminal objective:

"In [*Sparks*], the circumstances of defendant's conduct demonstrate that *he had to have formed a discrete criminal objective each time he made an unlawful entry into one of the motel rooms*."

150 Or App at 297 (emphasis added). Consecutive sentences were lawfully imposed without applying the "shift-to-I" rule in *Sparks* because each burglary involved a separate criminal objective. Likewise here, because petitioner's conduct was not directed to the accomplishment of a single criminal objective, it was proper to sentence him to consecutive sentences without applying the "shift-to-I" rule.

Petitioner next contends that his seven felon in possession of a firearm convictions arose from a single criminal episode because the firearms were found in the same place at the same time. It follows, petitioner argues, that his counsel was inadequate in failing to argue before the sentencing court that it was required to apply the "shift-to-I" rule for all sentences imposed consecutively to the sentence on the primary offense. OAR 213-012-0020(2)(a)(B). Again, however, under ORS 131.505(4), the ultimate consideration is whether the conduct in question was directed to the accomplishment

of a single criminal objective. In *State v. Padilla*, 118 Or App 122, 124, 846 P2d 437 (1993), the police found three weapons in the defendant's residence; the defendant was convicted of three counts of felon in possession of a firearm, and the trial court imposed consecutive sentences on those convictions without applying the "shift-to-I" rule. On appeal, the defendant argued that consecutive sentences could not be lawfully imposed because all of the weapons were located in the same place at the same time. *Id.* We disagreed, concluding that "[f]inding more than one weapon in a single location is not the equivalent of offenses committed in a 'continuous and uninterrupted course of conduct.' " *Id.* (citation omitted).

The key consideration is whether the guns were acquired by separate acts. *State v. Collins*, 100 Or App 311, 785 P2d 1084 (1990). In *Collins*, we determined that the defendant's possession of two firearms was not part of a single criminal episode. *Id.* at 313. The handguns were two separate objects, and there was circumstantial evidence, such as the placement of the guns in different locations in a pickup, that they were concealed by separate acts. *Id.* In short, the offenses were not directed toward a single criminal objective. Similarly, here, the responding officers found seven separate firearms in petitioner's home, and there was circumstantial evidence, such as the placement of guns in the closet and under the bed, that they were concealed by separate acts. As a result, there was sufficient evidence for the trial court to conclude that the firearms were acquired separately; therefore, it was proper to sentence petitioner to consecutive sentences for two counts of felon in possession of a firearm without applying the "shift-to-I" rule, and petitioner's trial counsel was not inadequate for failing to argue otherwise.

It follows that the post-conviction court did not err in denying petitioner's claim on the ground of inadequate assistance of counsel.

Affirmed.