Submitted November 26, 2014, remanded for resentencing, otherwise affirmed April 6, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

v.

## DEBRA ORA DESLAURIER,
*Defendant-Appellant.*

Josephine County Circuit Court
11CR0442; A152186

371 P3d 505

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Garrett, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Defendant challenges the sentence imposed by the trial court after the jury returned guilty verdicts on two counts of first-degree criminal mistreatment (Counts 1 and 3), ORS 163.205, and two counts of first-degree aggravated theft (Counts 2 and 4), ORS 164.057. She raises two assignments of error, asserting that the trial court erred by imposing $65,580.20 in restitution in the absence of a jury determination as to the appropriate amount and contending that the trial court erred when it failed to apply the "shift-to-I" rule in calculating her sentence. *See* OAR 213-012-0020(2) (a)(A), (B).

As to defendant's first assignment of error, addressed in further detail below, we adhere to our decision in *State v. McMillan (A112613)*, 199 Or App 398, 403, 111 P3d 1136 (2005), in which we concluded that the jury-trial right, guaranteed by the Sixth Amendment to the United States Constitution, does not require a jury determination of the facts underlying restitution because Oregon's restitution statute does not allow the court to increase the penalty for a crime beyond the statutory maximum. In adhering to *McMillan*, we reject defendant's assertion that the United States Supreme Court's decision in *Southern Union Co. v. U. S.*, 567 US ___, 132 S Ct 2344, 183 L Ed 2d 318 (2012), requires us to overrule *McMillan*.

As to defendant's second assignment of error, the state concedes that the trial court erred by failing to "shift-to-I" before imposing the sentence on Count 4 consecutively to the sentence on Count 3. As explained below, we agree with, and accept the state's concession, and remand for resentencing.

The relevant facts are undisputed and mostly procedural. Defendant and her husband assumed the physical and financial care of the victim, defendant's elderly mother-in-law in April 2010. By the end of that year, the victim's total liquid assets had dropped from $102,000 to $29,000. Defendant had made a number of abnormally large bank account withdrawals including a number of cash withdrawals from the victim's account at ATMs in places with gaming

machines, and had lost a significant amount of the victim's money while gaming.

After an investigation, defendant was indicted on two counts of first-degree criminal mistreatment and two counts of first-degree aggravated theft. A jury found defendant guilty on all counts, and the court entered a judgment of conviction sentencing her to 18 months' imprisonment on Counts 1 and 2, 32 months' imprisonment on Count 3, and 32 months' imprisonment on Count 4 to be served consecutively to her sentence on Count 3. After sentencing, the court held a restitution hearing and found on the record that the victim had suffered $65,580.20 in economic damages due to defendant's crimes; shortly thereafter, the court entered a supplemental judgment reflecting the amount of restitution owed by defendant.

Defendant first assigns error to the imposition of restitution. She contends that the Sixth Amendment requires the state to prove to a jury beyond a reasonable doubt the facts underlying the restitution award. To support that proposition, she points out that the Court's decision in *Southern Union* held that the rules of *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), apply to the imposition of criminal fines. *Southern Union*, 567 US at ___, 132 S Ct at 2357. In brief, *Apprendi* and *Blakely* held that the Sixth Amendment's jury-trial guarantee requires that any fact that increases the prescribed "statutory maximum" penalty authorized for a particular crime be proved to a jury beyond a reasonable doubt. Here, defendant asserts that the amount of restitution necessarily depends on factual findings, and that, because restitution is a term of the sentence in a criminal case, the Sixth Amendment jury-trial guarantee requires that a jury find the facts that support restitution.

The state counters that, in *McMillan*, we rejected the argument that the Sixth Amendment entitles a defendant to a jury determination of the amount of a victim's losses before the court may impose restitution. According to the state, *Southern Union* does nothing to change our

analysis in *McMillan* because *Southern Union* involved a determinate criminal fine and does not extend to "indeterminate sentencing schemes like restitution." To decide the issue, we examine *Apprendi, Blakely, McMillan,* and the Court's recent decision in *Southern Union.*

The Court held in *Apprendi* that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. In that case, the state had charged the defendant with a firearms crime, which carried a prison term of five to 10 years. After the defendant pleaded guilty, the state filed a motion to enhance the sentence on the basis of the state's "hate-crime" statute. The trial court found by a preponderance of evidence that the defendant's crime was racially motivated and sentenced the defendant to a 12-year term on the firearms count. The Court reversed, holding that the Sixth Amendment (applied to the states through the Fourteenth Amendment) entitles a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. *Id.* at 483-84. Further, the Court held that a statute that allows a judge—based on facts found by the judge—to impose a greater punishment than that authorized by the jury's verdict is unconstitutional. *Id.* at 490. Because the state statute at issue in *Apprendi* allowed the trial judge, based on facts found by the judge, to impose a sentence that exceeded the 10-year maximum authorized by law for the crime that the defendant had pleaded guilty to, the defendant's sentence violated the Sixth Amendment. *Id.* at 491-92.

In reaching that conclusion, the Court cautioned that it was not suggesting that "it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.* at 481 (emphasis in original). Rather, the Court clarified that the constitutional problem occurred when the judgment exceeded the range of sentencing options prescribed by the legislature. *Id.*

A few years later, the Court addressed the *Apprendi* rule, and explained in *Blakely* that a prescribed "statutory maximum" sentence is the

> "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority."

542 US at 303-04 (emphases in original; citations omitted). For example, in *Blakely*, the defendant pleaded guilty to kidnapping his estranged wife. *Id.* at 298-99. The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months. *Id.* The trial court, however, under state law, imposed an "exceptional" sentence of 90 months after making a judicial determination that the defendant had acted with "deliberate cruelty." *Id.* at 300. The question for the Court was whether the departure sentence based on facts found by the trial court violated the defendant's Sixth Amendment right to trial by jury. *Id.* at 301.

The Court answered the question in the affirmative, noting that the judge "could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea." *Id.* at 304. Applying the rule announced in *Apprendi*, the Court explained that the sentencing procedure violated the Sixth Amendment because it allowed the trial judge to impose a sentence that was more than three years above the statutory maximum on the basis of facts that were "neither admitted by [the defendant] nor found by a jury." *Id.* at 303.

In *McMillan*, we examined Oregon's restitution statute, ORS 137.106, in light of *Apprendi* and *Blakely*, to determine if the Sixth Amendment required that a jury make any findings of fact underlying a restitution award. 199 Or App at 402. We noted that, in cases where a person is convicted of a crime that has resulted in economic damages, ORS

137.106(1) requires the district attorney to investigate and present to the court evidence as to the nature and amount of those damages. The statute further provides that, "'[i]f the court finds from the evidence presented that a victim suffered [economic] damages, in addition to any other sanction it may impose, the court shall,' among other things, '[i]nclude in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's [economic] damages as determined by the court.'" *Id.* at 402-03 (quoting ORS 137.106(1)(a) (first and third brackets in *McMillan*)).

We rejected the defendant's argument that the imposition of restitution violated the Sixth Amendment, concluding that the restitution statute "does not permit any finding of the court to result in a sentence beyond the statutory maximum" because the statute "authorizes the court to require the payment of restitution as part of the judgment of conviction in an amount 'that equals the full amount of the victim's [economic] damages as determined by the court.'" *Id.* at 403. In other words, we concluded in *McMillan* that, "under Oregon's statutory restitution scheme, there is only one restitution outcome that is consistent with a jury's verdict—restitution for the full amount of the victim's economic damages—and so restitution cannot go beyond the jury's verdict or increase the penalty for the crime beyond the statutory maximum." *State v. Ramos*, 267 Or App 164, 170, 340 P3d 703 (2014), *aff'd*, 358 Or 581, 368 P3d 446 (2016).[1] As we later explained in *Ramos*, "[b]y that reasoning, determinations that underlie a restitution award can never exceed the jury's verdict." *Id.* As such, we concluded in *McMillan* that the restitution imposed did not violate the principles announced in *Apprendi* and *Blakely*. 199 Or App at 403.

The question in this case is whether *Southern Union* abrogates our conclusion in *McMillan* that ORS 137.106 does not violate the Sixth Amendment because a restitution award "does not permit any finding of the court to result in

---

[1] In *Ramos*, 267 Or App at 169, we refused to review as plain error the defendant's argument that, given *Southern Union*, a restitution award violated the Sixth Amendment, concluding that the error raised by the defendant was not "obvious" and thus not an appropriate subject for plain error review.

a sentence beyond the statutory maximum." 199 Or App at 403. Accordingly, we turn to *Southern Union.*

In that case, a federal grand jury indicted a natural gas distributor for violating federal environmental laws by knowingly storing liquid mercury without a permit for "on or about" a period constituting 762 days. 567 US at ___, 132 S Ct at 2349. At trial, a jury found the company guilty of doing so for "on or about" the same period. The offense was punishable by, among other things, a fine of $50,000 for each day of violation. After trial, under federal sentencing procedures, the probation office set a maximum fine of $38.1 million for the trial court's consideration, representing a $50,000 fine for each of the 762 days of violation alleged in the indictment. The company objected, contending that the calculation violated *Apprendi* because the jury had not been asked to determine the precise duration of the violation. Therefore, the jury had only necessarily found that the company had violated the law for one day, so any fine greater than $50,000 would require further factfinding by the court in contravention of *Apprendi.* The federal government countered that *Apprendi* did not apply to criminal fines. The court imposed a fine of $6 million.

Ultimately, the case reached the Court, which concluded that the *Apprendi* rule applies to criminal fines of the sort imposed on the company. *Southern Union,* 567 US at ___, 132 S Ct at 2350. Noting that it had repeatedly affirmed the *Apprendi* rule by applying it "to a variety of sentencing schemes that allowed judges to find facts that increased a defendant's maximum authorized sentence," the Court saw "no principled basis" for treating criminal fines differently. *Id.* at ___, 132 S Ct at 2350. The Court explained that *Apprendi*'s rule is "rooted in longstanding common-law practice * * * [that] preserves the 'historic jury function' of 'determining whether the prosecution has proved each element of an offense beyond a reasonable doubt.'" *Id.* at ___, 132 S Ct at 2350 (quoting *Oregon v. Ice,* 555 US 160, 163, 129 S Ct 711, 172 L Ed 2d 517 (2009)). The Court noted that, in applying *Apprendi,* it had never distinguished one form of punishment from another and that "our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms

that each undeniably embrace fines." *Id.* at ___, 132 S Ct at 2351 (brackets in original). Applying the *Apprendi* rule to the facts of the case, the Court concluded that the maximum criminal fine for the company depended on the length of the violation, and that, because the court had made factual findings that increased both the potential and actual fine imposed, the court violated the Sixth Amendment by enlarging the maximum punishment allowed by the jury's verdict. *Id.* at ___, 132 S Ct at 2352.

We conclude that nothing in *Southern Union* abrogates *McMillan*. *Southern Union* clarified that the *Apprendi* rule applies to criminal fines, but did nothing to alter the basis for our decision in *McMillan*—*i.e.*, that *Apprendi* is not implicated when a judge makes a factual determination that does not result in a sentence beyond the statutory maximum. That is, the meaning of a prescribed "statutory maximum" announced by the Court in *Blakely* was not changed by the Court in *Southern Union*. In fact, the Court recognized in *Southern Union* that the practice of judges imposing fines from a range *authorized* by jury-found facts "poses no problem under *Apprendi* because the penalty does not exceed what the jury's verdict permits." *Id.* at ___, 132 S Ct at 2352 n 5. Thus, our conclusion in *McMillan* that the *Apprendi* rule does not apply to ORS 137.106 because it does not allow a judge to order restitution in an amount that exceeds what the jury's verdict permits remains sound. Restitution in the full amount of the victim's economic damages does not exceed the "prescribed statutory maximum" because restitution for the full amount of the victim's economic damages is the only "restitution outcome that is consistent with a jury's verdict." *Ramos*, 267 Or App at 170. The jury found that defendant committed the crime and, in doing so, found that defendant was liable for the full amount of the victim's economic damages. Therefore, the restitution imposed in this case is unlike the circumstances in *Apprendi, Blakely,* and *Southern Union,* where judicial factfinding enlarged "the maximum punishment a defendant faces beyond what the jury's verdict or the defendant's admissions allow." *Southern Union*, 567 US at ___, 132 S Ct at 2352.[2]

___

[2] Our conclusion here is consistent with other jurisdictions that have considered whether *Southern Union* has expanded the rule of *Apprendi* to restitution.

As for defendant's second assignment of error, defendant asserts, and the state concedes, that the trial court erred when it failed to apply the "shift-to-I" rule before imposing the sentence on Count 4 consecutively to the sentence on Count 3. As we have explained,

> "[t]he 'shift-to-I' rule applies when a defendant is sentenced for multiple felonies in the same proceeding. In that event, the defendant's true criminal history score is used in assessing the grid block for imposing sentence on the primary offense (and any other offenses for which sentences will run concurrently). OAR 213-012-0020(2)(a)(A). For additional offenses for which consecutive sentences will be imposed, the court is required to use the criminal history score 'I.' OAR 213-012-0020(2)(a)(B)."

*State v. Mayes*, 234 Or App 707, 709 n 1, 229 P3d 628, *rev den*, 348 Or 669 (2010). The "shift-to-I" rule does not apply to "consecutive sentences imposed for crimes that have different victims," OAR 213-012-0020(5); *State v. McNeil*, 170 Or App 407, 410, 12 P3d 992 (2000), or that stem from different criminal episodes, *see Orchard v. Mills*, 247 Or App 355, 358, 270 P3d 309 (2011), *rev den*, 352 Or 33 (2012) ("shift-to-I" rule applies only when consecutive sentences are imposed for crimes that arise from a single criminal episode).

Defendant contends that, because the only evidence in the record is that Count 3 and Count 4 involved the same victim and the same criminal episode, the court erroneously calculated her sentence on Count 4 using her "true criminal history score" of "C" rather than the criminal history score "I." The state concedes that defendant's convictions on those counts stemmed from the same criminal episode and

---

*See, e.g., State v. Huff,* 50 Kan App 2d 1094, 1099, 336 P3d 897, 900 (2015) (restitution does not exceed the statutory maximum of a defendant's sentence); *People v. Kramis,* 209 Cal App 4th 346, 351, 147 Cal Rptr 3d 84, 87 (2012) (concluding that *Southern Union* "does not impact" a restitution fine because the court imposed restitution within the statutorily authorized range and thus did not make any factual finding that increased the potential fine "beyond what the jury's verdict— the fact of the conviction—allowed"); *U. S. v. Green,* 722 F3d 1146 (9th Cir 2013), *cert den,* ___ US ___, 134 S Ct 658 (2014) (concluding that *Southern Union* does not apply to restitution, in part, because restitution lacks a statutory maximum; instead it is tied to the amount of the victim's losses); *U. S. v. Day,* 700 F3d 713 (4th Cir 2012), *cert den,* ___ US ___ 133 S Ct 2038 (2013) (declining to extend the *Apprendi* rule to restitution because there is no prescribed statutory maximum in the restitution context).

involved the same victim; therefore, the state concedes that the court committed error when it failed to apply the "shift-to-I" rule to consecutive sentences on Counts 3 and 4. We agree, accept the state's concession, and remand the case for resentencing.

Remanded for resentencing; otherwise affirmed.