No. 120,903

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JAMES ROBISON III,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, a constitutional issue not raised before the district court is deemed waived or abandoned. Nevertheless, appellate courts can review issues presented on appeal where: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; or (3) the district court is right for the wrong reason. However, even if an exception would support a decision to review a new claim, appellate courts have no obligation to do so.

2.

The right to a jury trial is a fundamental right under both Section 5 of the Kansas Constitution Bill of Rights and under the Sixth Amendment to the United States Constitution.

3.

K.S.A. 2017 Supp. 21-6604(b)(1) grants a district court the authority to order a convicted defendant to pay restitution as part of the sentence. Similarly, K.S.A. 2017 Supp. 21-6607(c)(2) grants a district court the authority to order restitution payments as a

condition of probation. Both statutes provide that the restitution amount must include the victim's damage or loss caused by the defendant's crime, unless the district court finds compelling circumstances that would render a plan of restitution to be unworkable.

4.

Restitution is a form of restorative justice. It is intended to restore the victims of crime to the position they found themselves in prior to a defendant's commission of the offense that caused the injury or damage. Although part of the criminal sentence, restitution is intended to fairly compensate the victims of crime who actually suffered an injury or damage rather than the government.

5.

The imposition of criminal restitution by a district judge under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2) does not violate Section 5 of the Kansas Constitution Bill of Rights.

6.

Neither K.S.A. 2017 Supp. 21-6604(b)(1) nor K.S.A. 2017 Supp. 21-6607(c)(2) impose a mandatory minimum amount or a mandatory maximum amount that a convicted defendant must pay to reimburse a victim of crime. Both statutes base the maximum amount of restitution on the actual damage or loss suffered by the victim as a result of the defendant's crime. Likewise, both statutes grant the district court the authority to order a lesser amount than the actual amount suffered by the victim if compelling circumstances show a restitution plan to be unworkable.

7.

The imposition of criminal restitution by a district judge under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2) does not violate the Sixth Amendment to the United States Constitution.

2

8.

Neither K.S.A. 2017 Supp. 21-6604(b)(1) nor K.S.A. 2017 Supp. 21-6607(c)(2) prohibit a district court from awarding restitution to an insurance carrier that has suffered damage or injury as a result of the defendant's crime.

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed June 26, 2020. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

BRUNS, J.:  Robert James Robison, III pled no contest to one count of battery of a law enforcement officer. As part of his sentence, the district court required Robison to pay $2,648.56 in restitution to reimburse a workers compensation insurance carrier that had paid the medical expenses of the law enforcement officer injured as a result of the battery. On appeal, Robison contends that the order of restitution violates both Section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment of the United States Constitution. In addition, Robison contends that the district court erred in awarding restitution to be paid to an insurance carrier. Finding no error, we affirm the district court's order of restitution.

FACTS

On January 3, 2018, the State charged Robison with two counts of battery of a law enforcement officer in violation of K.S.A. 2017 Supp. 21-5413(c)(3)(D). The charges stemmed from an incident at the Lyon County Jail in which Robison hit Officer Zachary

3

Nance and Corporal Bobby Cutright several times. Corporal Cutright suffered an injury to his eye and a bite on his arm. Following the incident, he went to Newman Regional Health where he received treatment. Lyon County's workers compensation insurance carrier subsequently paid Corporal Cutright's medical bills.

Prior to trial, the parties entered into a plea agreement in which Robison agreed to plead no contest to one count of battery of a law enforcement officer. In exchange, the State agreed to dismiss the second count and further agreed not to request a fine. On March 20, 2018, the district court accepted Robison's no-contest plea and found him guilty of a single count of battery of a law enforcement officer arising out of the attack on Corporal Cutright. A few months later, the district court sentenced Robison to 32 months' imprisonment and 24 months' post-release supervision. Complying with the terms of the plea agreement, the district court did not impose a fine. However, the district court agreed to consider the State's request for restitution and continued the resolution of the request until a later date.

At a restitution hearing held on August 21, 2018, the State requested that Robison pay $2,648.56 in restitution to reimburse the workers compensation insurance carrier that paid Corporal Cutright's medical bills arising out of the battery. A hospital employee testified about the medical bills and verified that they had been paid by the insurance carrier. Robison's counsel did not dispute the amount of the medical bills or that they arose out of the attack on Corporal Cutright. Instead, defense counsel argued that the workers compensation insurance carrier was not entitled to restitution and had not requested reimbursement.

After considering the evidence and the arguments of counsel, the district court found that the medical bills incurred by Corporal Cutright were caused by Robison's crime and that Lyon County's insurance carrier had paid the medical expenses on the officer's behalf. Accordingly, the district court ordered Robison to pay restitution in the

4

amount of $2,648.56 to reimburse the workers compensation insurance carrier for the medical expenses it had paid.

On appeal, Robison raises three issues. First, Robison contends that the Kansas restitution statutes violate Section 5 of the Kansas Constitution Bill of Rights because they encroach upon a criminal defendant's common law right to a civil jury trial on damages caused by the defendant's crime. Second, Robison contends that his right to a jury trial on the issue of restitution under the Sixth Amendment of the United States Constitution was violated because the statutes allowed the court to make a finding of fact that increased the penalty for his crime beyond the prescribed statutory maximum. Third, Robison contends that the statutes governing restitution preclude district courts from awarding restitution to an insurance carrier that has paid the victim's medical expenses caused by a criminal defendant. In response, the State denies each of these contentions. Specifically, the State maintains that the Kansas restitution statutes are constitutional—both under the Kansas Constitution and United States Constitution—and requests that we affirm the district court's restitution order.

PRESERVATION

At the outset, we must determine whether Robison's constitutional claims are properly before this court. The State argues that these issues were not properly preserved at the district court level and we should not consider them. It is undisputed that Robison asserts violations of the Kansas Constitution and the United States Constitution for the first time on appeal. Whether an issue has been properly preserved for appeal is a question of law that we review de novo. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012).

Generally, a constitutional issue not raised before the district court is considered to be waived or abandoned. Nevertheless, we can review issues presented on appeal in cases

5

where: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; or (3) the district court is right for the wrong reason. *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so." *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020).

The right to a jury trial is a fundamental right under both Section 5 of the Kansas Constitution Bill of Rights and under the Sixth Amendment to the United States Constitution. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). Robison argues that his fundamental constitutional right to a jury trial was violated when the district court decided the issue of restitution. Although Robison did not raise these issues before the district court, we may consider them because they potentially implicate a claim to the fundamental right to a trial by a jury under the Kansas Constitution and the United States Constitution. See *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012). Accordingly, we find that a decision on the merits would serve the ends of justice.

ANALYSIS

*Section 5 of the Kansas Constitution Bill of Rights*

The district court's authority to order restitution in a criminal case is established by statute. Robison contends that these statutes violate Section 5 of the Kansas Constitution Bill of Rights, which provides that "[t]he right of trial by jury shall be inviolate." So we begin our analysis by looking at the statutes challenged by Robison.

K.S.A. 2017 Supp. 21-6604(b)(1)—which was applied in this case—grants a district court the authority to order the defendant to pay restitution as part of the sentence.

The statute provides that the restitution amount "shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Similarly, K.S.A. 2017 Supp. 21-6607(c)(2) grants a district court the authority to order restitution payments as a condition of probation. Based on the clear and unambiguous language of the statutes, "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citations omitted.]" *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015).

Robison claims K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2) violate Section 5 of the Kansas Constitution Bill of Rights because they deprive him of his right to have a civil jury determine the amount of damages or loss caused by his crimes. Whether the criminal restitution statutes violate Section 5 of the Kansas Constitution is a legal question. Although we usually must presume that a statute is constitutional and must look for any reasonable way to interpret the statute to avoid a violation, this presumption does not apply to claims involving fundamental rights. See *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132-33, 442 P.3d 509 (2019) (plurality opinion). Even so, we do not find Robison's arguments to be persuasive.

The parties agree that Section 5 of the Kansas Constitution Bill of Rights preserves the common law right to a jury trial as it existed at the time of its adoption. The Kansas Constitution was approved by the delegates to the Wyandotte Constitutional Convention on July 29, 1859. A few months later, on October 4, 1859, the Kansas Constitution—also known as the Wyandotte Constitution—was overwhelmingly approved by popular vote. Consequently, Section 5 of the Kansas Constitution only applies if it can be shown that territorial juries would have decided the issue of restitution in 1859. See *Hilburn*, 309 Kan. at 1134.

7

Robison offers several arguments in an attempt to show that the criminal restitution statutes implicate the right to a jury trial under Section 5 of the Kansas Constitution. He first analogizes criminal restitution to causation and civil damages in a tort action. Robison accurately points out that Kansas juries decided the amount of civil damages in tort prior to statehood. See Kan. Terr. Stat. 1859, ch. 25, § 274. From there, he springs to the conclusion that criminal restitution should be treated like a civil remedy because such orders can be enforced like civil judgments under K.S.A. 60-4301.

We find Robison's comparison of criminal restitution to causation and civil damages in tort to be unavailing. In fact, the Kansas Supreme Court has found that "[r]estitution ordered in criminal proceedings and civil damages are separate and independent remedies under Kansas Law." *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 (1999). Our Supreme Court recognized that "[t]he judge's order of restitution in a criminal action does not bar a victim from seeking damages in a separate civil action. Likewise, the judge . . . is not foreclosed from ordering restitution just because the victim has received compensation in a civil action." 266 Kan. at 1079. Because criminal restitution is not a civil judgment, we do not find that Section 5 of the Kansas Constitution Bill of Rights requires that criminal restitution be imposed by a jury.

Robison also argues that he has a right to a jury trial under Section 5 of the Kansas Constitution because Kansas juries would have had to determine the amount of criminal restitution in 1859. In support of his argument, Robison cites a Kansas territorial statute that required juries in criminal cases to determine the value of stolen property for certain theft offenses. See Kan. Terr. Stat. 1859, ch. 27, § 219. But as the State points out, the reason juries had to make a finding regarding the value of stolen property was because that factual determination affected the severity level of the offense. See Kan. Terr. Stat. 1859, ch. 28, §§ 72-74, 82-88, 91. As a result, factual findings by juries under the territorial statutes about the value of stolen property affected the appropriate sentence to be imposed on the defendant. But this does not mean that juries were used—either at

8

common law or under territorial statutes—to determine whether an order of restitution could be awarded.

Because criminal restitution is not a civil remedy and Robison has not even shown that restitution was available at common law, we find his arguments to be unpersuasive. Notably, Robison cites no provision in the Kansas territorial statutes that mention criminal restitution. Likewise, he does not cite any Kansas territorial cases referencing criminal restitution. As Robison candidly acknowledges, criminal restitution was not listed in the Kansas territorial statutes as a permissible remedy for any crime in 1859. Therefore, we conclude that Robison has failed to establish that Section 5 of the Kansas Constitution Bill of Rights requires that a jury impose criminal restitution under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2).

*Sixth Amendment of the United States Constitution*

Next, Robison contends that the Kansas restitution statutes violate his right to a jury trial under the Sixth Amendment to the United States Constitution. Robison argues that the Kansas criminal restitution statutes violate the Sixth Amendment because they allow a judge to determine the amount of restitution to be awarded to a victim. In support of this argument, Robison cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in which the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. He also cites *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), in which the United States Supreme Court held that facts that increase a mandatory minimum penalty must also be decided by a jury.

In response, the State contends that the Sixth Amendment does not apply because criminal restitution is not punishment. The State argues that even if criminal restitution is punishment, it does not violate either *Apprendi* or *Alleyne* because a district court's imposition of restitution does not increase the statutory maximum or minimum penalty for an offense. The State relies on this court's opinion in *State v. Huff*, 50 Kan. App. 2d 1094, 336 P.3d 897 (2014), *rev. denied* 302 Kan. 1015 (2015), which held the statutes do not violate the Sixth Amendment because restitution does not increase the statutory maximum or minimum penalty for an offense. In addition, the State cites several federal cases that reject similar challenges to criminal restitution statutes. See *United States v. Day*, 700 F.3d 713, 716, 732 (4th Cir. 2012), and *United States v. Burns*, 800 F.3d 1258, 1261-62 (10th Cir. 2015).

Both parties acknowledge that this court has previously addressed this issue in *Huff*. Likewise, we note that the Kansas Supreme Court has granted a petition for review in one of the cases from our court from this court addressing this issue. *State v. Arnett*, No. 112,572, 2018 WL 2072804 (Kan. App.) (unpublished opinion), *rev. granted* 308 Kan. 1596 (2018). We also note that in another case in which our court addressed this issue, the Kansas Supreme Court initially granted a petition for review but subsequently withdrew its order. *State v. Patterson*, No. 114,861, 2017 WL 3207149 (Kan. App. 2017) (unpublished opinion), mandate issued November 14, 2019.

As discussed above, there are two Kansas statutes that require district courts to order a defendant to pay restitution absent a finding of unworkability. K.S.A. 2017 Supp. 21-6604(b)(1)—which was applied in this case—provides that a district court must "order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Likewise, K.S.A. 2017 Supp. 21-6607(c)(2)—which applies restitution to the terms of probation—provides that a district court must order the defendant to "make reparation or restitution to the aggrieved party

10

for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Despite minor differences in the wording, this court has interpreted the two statutes similarly because they were enacted together and cover the same subject matter. See *State v. Miller*, 51 Kan. App. 2d 869, 872, 355 P.3d 716 (2015).

Restitution is a form of restorative justice. It is intended to restore the victims of crime to the position they found themselves in prior to a defendant's commission of the offense that caused the injury or damage. See Black's Law Dictionary 1571 (11th ed. 2019) (Restitution is the "[r]eturn or restoration of some specific thing to its rightful owner or status; Compensation for loss, esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation."). Although part of the criminal sentence, restitution benefits the criminal victims who actually suffered an injury or damage rather than the government. See *State v. Heim*, No. 111,665, 2015 WL 1514060, at *2 (Kan. App. 2015) (unpublished opinion) ("Restitution is intended to fairly compensate crime victims and to further the rehabilitation of defendants by instilling in them some sense of the costs their wrongdoing has inflicted.").

"While it is undeniable that restitution is part of a defendant's sentence, it does not mean restitution is punishment." *Huff*, 50 Kan. App. 2d at 1099; see also *State v. Hall*, 45 Kan. App. 2d 290, 298, 247 P.3d 1050 (2011) (restitution is not part of a defendant's punishment), *aff'd* 297 Kan. 709, 304 P.3d 677 (2013). Nevertheless, even if it is assumed that restitution constitutes punishment, we find that Robison's Sixth Amendment argument fails. This is because neither K.S.A. 2017 Supp. 21-6604(b)(1) nor K.S.A. 2017 Supp. 21-6607(c)(2) impose a mandatory minimum amount or a mandatory maximum amount that a convicted defendant must pay to reimburse a victim of crime.

11

It is important to recognize that both statutes grant a district court the authority to order a lesser amount than the actual amount suffered if it "finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2017 Supp. 21-6604(b)(1); K.S.A. 2017 Supp. 21-6607(c)(2). Moreover, the restitution statutes impose no mandatory maximum amount that a district court may award. Rather, both statutes grant a district court the authority to order restitution in an amount equal to the "damage or loss caused by the defendant's crime . . . ." See K.S.A. 2017 Supp. 21-6604(b)(1); K.S.A. 2017 Supp. 21-6607(c)(2). In other words, as our Supreme Court found in *Applegate*, unless a restitution plan is shown to be unworkable, the amount to be awarded is that which "reimburses the victim for the actual loss suffered." 266 Kan. at 1079.

Accordingly, because the Kansas statutes do not include mandatory minimums or maximums, we find that neither *Alleyne* nor *Apprendi* applies to the award of criminal restitution. As a result, we conclude that Robison's Sixth Amendment right to a jury trial was not violated by the district court's imposition of restitution. Moreover, we note that our holding is consistent with the numerous federal and state courts that have considered the issue.

At least 11 of the 13 United States Circuit Courts of Appeal have refused to extend *Apprendi* and its progeny to orders of restitution. See *United States v. George*, 949 F.3d 1181, 1188 (9th Cir. 2020); *United States v. Vega-Martinez*, 949 F.3d 43, 54 (1st Cir. 2020); *United States v. Churn*, 800 F.3d 768, 780-83 (6th Cir. 2015); *Burns*, 800 F.3d at 1261-62; *United States v. Bengis*, 783 F.3d 407, 411-13 (2d Cir. 2015); *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014); *Day*, 700 F.3d at 732 (4th Cir. 2012); *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006); *United States v. Leahy*, 438 F.3d 328, 335-38 (3d Cir. 2006); *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005). In fact, we

12

can find no federal court that has held judicially ordered restitution violates *Apprendi* and its progeny.

Similarly, several state courts have joined this court in concluding that *Apprendi* and its progeny do not apply to restitution orders. See *State v. Leon*, 240 Ariz. 492, 495-96, 381 P.3d 286 (Ct. App. 2016); *People v. Wall*, 3 Cal. 5th 1048, 1075-76, 224 Cal. Rptr. 3d 861, 404 P.3d 1209 (2017); *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007); *Smith v. State*, 990 N.E.2d 517, 520-22 (Ind. App. 2013); *State v. Foumai*, No. CAAP-17-0000093, 2018 WL 495679, at *4 (Haw. Ct. App. 2018) (unpublished opinion); *Commonwealth v. Denehy*, 466 Mass. 723, 736-38, 2 N.E.3d 161 (2014); *People v. Corbin*, 312 Mich. App. 352, 371-73, 880 N.W.2d 2 (2015); *State v. Rey*, 905 N.W.2d 490, 496-97 (Minn. 2018); *State v. Clapper*, 273 Neb. 750, 755-59, 732 N.W.2d 657 (2007); *State v. Martinez*, 392 N.J. Super. 307, 315-18, 920 A.2d 715 (2007); *People v. Horne*, 97 N.Y.2d 404, 414-15, 740 N.Y.S.2d 675, 767 N.E.2d 132 (2002); *State v. Deslaurier*, 277 Or. App. 288, 295, 371 P.3d 505 (2016); *State v. Kinneman*, 155 Wash. 2d 272, 282, 119 P.3d 350 (2005).

We recognize that some legal scholars believe the United States Supreme Court intimated in its opinion in *Southern Union Co. v. United States*, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), that it might extend the Sixth Amendment right to a jury trial on the issue of criminal restitution. We do not hold that belief. In *Southern Union*, the United States Supreme Court reviewed a state statute that imposed a maximum criminal fine for each day that the defendant was in violation. Under those circumstances, the Supreme Court found that a jury was needed to determine how many days the violation had occurred. 567 U.S. at 347-50. Of note, *Southern Union* explains that *Apprendi* prohibits "judicial factfinding that enlarges the maximum punishment a defendant faces beyond what the jury's verdict or the defendant's admissions allow." 567 U.S. at 352. Of course, as explained above, there is a substantial difference between criminal fines paid to the government and restitution paid to reimburse victims.

Furthermore, several United States Circuit Courts have concluded that *Southern Union* does not extend *Apprendi* and its progeny to restitution. Recently, in *Vega-Martinez*, which was decided earlier this year, the First Circuit held that because restitution under the federal Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, has no statutory maximum amount and instead tasks district courts with determining the factual amount of loss, *Apprendi* does not apply. *Vega-Martinez*, 949 F.3d at 54-55; see also *Bengis*, 783 F.3d at 412 (Under the MVRA, "a judge cannot find facts that would cause the amount to exceed a prescribed statutory maximum."). In reaching this conclusion, the First Circuit agreed with several other Circuit Courts that had found that *Southern Union* "does not overrule their previous holdings that *Apprendi* does not apply to restitution calculations." *Vega-Martinez*, 949 F.3d at 55 (citing *United States v. Sawyer*, 825 F.3d 287, 297 [6th Cir. 2016]); *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015); *Bengis*, 783 F.3d at 412-13; *Rosbottom*, 763 F.3d at 420; *United States v. Green*, 722 F.3d 1146, 1149-50 (9th Cir. 2013); *United States v. Wolfe*, 701 F.3d 1206, 1216-17 (7th Cir. 2012); *Day*, 700 F.3d at 732.

In *Green*, the United States Court of Appeals for the Ninth Circuit found:

"[I]t's not even clear that restitution's a form of punishment. We've held in some contexts that 'restitution under the MVRA is punishment.'" *United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998); see *United States v. Ballek*, 170 F.3d 871, 876 (9th Cir. 1999). But in other contexts, we've held it's not. See *United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) ('[F]orfeiture and restitution serve entirely distinct purposes: "Congress conceived of forfeiture as *punishment* . . . . The purpose of restitution . . . , however, is not to punish the defendant, but to *make the victim whole again*."' (quoting *United States v. Newman*, 659 F.3d 1235, 1241 [9th Cir. 2011]); *Gordon*, 393 F.3d at 1052 n.6 ('[T]he MVRA's purpose is to make the victims whole; conversely, the Sentencing Guidelines serve a punitive purpose.'). Sometimes we've held it's a hybrid, with 'both compensatory and penal purposes.' *United States v. Rich*, 603 F.3d 722, 729 (9th Cir. 2010). Even if *Apprendi* covers all forms of punishment, restitution's not

14

'clearly' punishment, so we can't rely on *Southern Union* to overrule our restitution precedents." 722 F.3d at 1150.

The Ninth Circuit also found it significant in *Green* that the MVRA does not have a statutory maximum. Rather, restitution is "pegged to the amount of the victim's loss. A judge cannot exceed the non-existent statutory maximum for restitution no matter what facts he finds, so *Apprendi*'s not implicated." 722 F.3d at 1150. Likewise, as discussed above, the Kansas restitution scheme does not have either a statutory maximum or minimum. So, like their federal counterparts, a Kansas district judge cannot exceed a statutory maximum—or statutory minimum—that does not exist.

In *Day*, the United States Court of Appeals for the Fourth Circuit also rejected the defendant's claim that *Southern Union* compelled a finding that the *Apprendi* rule should be extended to orders of restitution. 700 F.3d at 731. In *Day*, the Fourth Circuit found:

> "Prior to *Southern Union*, every circuit to consider whether *Apprendi* applies to restitution held that it did not. See *United States v. Milkiewicz*, 470 F.3d 390, 403 (1st Cir.2006) ('[L]ike all of the other circuits to consider this question, we conclude that [*Apprendi* does] not bar judges from finding the facts necessary to impose a restitution order.'). Day argues that we should break ranks with these prior decisions in light of Southern Union and apply *Apprendi* to restitution because it is 'similar' to a criminal fine.
>
> "We decline to take Day's suggested course. As an initial matter, we note that *Southern Union* does not discuss restitution, let alone hold that *Apprendi* should apply to it. Instead, far from demanding a change in tack, the logic of *Southern Union* actually reinforces the correctness of the uniform rule adopted in the federal courts to date. That is, *Southern Union* makes clear that *Apprendi* requires a jury determination regarding any fact that 'increases the penalty for a crime beyond the prescribed statutory maximum.' [Citations omitted.] Thus, in *Southern Union* itself, the *Apprendi* issue was triggered by the fact that the district court imposed a fine in excess of the statutory maximum that applied in that case. [Citation omitted.]
>
> "Critically, however, there is no prescribed statutory maximum in the restitution context; the amount of restitution that a court may order is instead indeterminate and

15

varies based on the amount of damage and injury caused by the offense. [Citation omitted.] As a consequence, the rule of *Apprendi* is simply not implicated to begin with by a trial court's entry of restitution." *Day*, 700 F.3d at 732.

We find that the holding in *Huff* is consistent with federal and state court decisions from across the United States. Furthermore, for nearly six years, district courts and panels of this court have followed the holding in *Huff*. See *Arnett*, 2018 WL 2072804, at \*2; *Patterson*, 2017 WL 3207149, at \*8 (since restitution does not implicate *Apprendi*, the court found no reason to review the issue for the first time on appeal); *State v. Bradwell*, No. 115,153, 2016 WL 7178771, at \*4 (Kan. App. 2016) (restitution is not punishment but is restorative in nature); *State v. Pister*, No. 113,752, 2016 WL 4736619, at \*7 (Kan. App. 2016), *rev. denied* 306 Kan. 1328 (2017); and *State v. Jones*, No. 113,044, 2016 WL 852865, at \*9 (Kan. App. 2016), *rev. granted* 307 Kan. 991 (2017). *Huff* has also been cited with approval by other jurisdictions. See *Deslaurier*, 277 Or. App. at 295 n.2 (Oregon Court of Appeals citing *Huff* in support of conclusion that the imposition of restitution is unlike the circumstances in *Apprendi* and *Southern Union*); *Foumai*, 2018 WL 495679, at \*4 (Hawaii Court of Appeals citing *Huff* in concluding that *Apprendi* does not apply to an order of restitution).

Despite Robison's claim that K.S.A. 2017 Supp. 21-6604(b)(1) increases the statutory minimum penalty, we find that it does not require a district judge to award the full amount of damage or loss. See *State v. Meeks*, 307 Kan. 813, 821, 415 P.3d 400 (2018) (affirming restitution order that was less than the loss sustained by the victims as a result of the theft of the vehicle). In fact, under the plain language of K.S.A. 2017 Supp. 21-6604(b)(1), a district judge has the authority to impose no restitution if it "finds compelling circumstances which would render a plan of restitution unworkable." We note that this is also true under K.S.A. 2017 Supp. 21-6607(c)(2). We thus conclude that *Alleyne* is not applicable because the Kansas restitution statutes do not include statutory minimums and, as such, they cannot be increased.

16

In summary, we find that the statutes governing restitution in Kansas impose neither mandatory minimum amounts nor mandatory maximum amounts. See K.S.A. 2017 Supp. 21-6604(b)(1); K.S.A. 2017 Supp. 21-6607(c)(2). So they do not trigger the concerns expressed by the United States Supreme Court in *Apprendi* or *Alleyne*. Thus, we conclude that the district court's imposition of restitution in this case did not violate Robison's Sixth Amendment right to a trial by jury.

*Award of Restitution to Insurance Carrier*

Robison also contends that the district court erred in awarding restitution to an insurance company. He divides this argument into two parts. Initially, he argues that under K.S.A. 2017 Supp. 21-6604, an insurance company cannot receive restitution for damages caused by a defendant's crime. Next, he argues that even if an insurance company can receive restitution under the Kansas restitution statutes, the damage or loss to the insurance carrier in this case has not been established. We find neither argument to be persuasive.

We exercise unlimited review over that legal question because it requires interpreting the restitution statutes. *State v. Dexter*, 276 Kan. 909, Syl. ¶ 2, 80 P.3d 1125 (2003). Robison acknowledges that the Kansas Supreme Court has held that a district court may award restitution to an insurance carrier. *State v. Beechum*, 251 Kan. 194, Syl. ¶ 3, 833 P.2d 988 (1992). Similarly, panels of this court have found that an "aggrieved party" under the restitution statutes includes an insurance company paying claims under a crime victim's policy. See *State v. Hand*, 45 Kan. App. 2d 898, Syl. ¶ 3, 257 P.3d 780 (2011), *rev'd on other grounds* 297 Kan. 734, 304 P.3d 1234 (2013); *State v. Jones*, No. 119,470, 2019 WL 2554115, at * 2 (Kan. App. 2019) (unpublished opinion); *State v. Blaylock*, No. 114,789, 2017 WL 839522, at *1-2 (Kan. App. 2017) (unpublished opinion). Furthermore, our Supreme Court found that the language in K.S.A. 1991 Supp. 21-6607(c)(2) regarding the payment of restitution to an "aggrieved party" for damage

caused by the criminal act includes insurance companies. *Beechum*, 251 Kan. 194, Syl. ¶ 3.

Despite Robison's arguments to the contrary, we find that the rationale in *Beechum* and the other cases cited above applies equally to restitution ordered under K.S.A. 2017 Supp. 21-6604. Again, this court has interpreted the two restitution provisions to have the same meaning. *Miller*, 51 Kan. App. 2d at 872. Also, Robison offers no reason why the Kansas Legislature would have wanted to limit insurance carriers from receiving compensation for their losses as a condition of probation. Because we find that both statutes allow insurance companies to receive restitution, Robison's argument fails.

Nevertheless, Robison argues that even if insurance companies can receive restitution under K.S.A. 2017 Supp. 21-6604(b)(1), the State did not establish that the insurance carrier in this case suffered any damage or loss as a result of his crime. We review the amount of restitution awarded for abuse of discretion. A district court abuses its discretion if its decision is based on legal or factual error, or if no reasonable person would agree with its decision. So, the district court's finding of a causal link between the defendant's crime and the victim's loss must be supported by substantial evidence. *State v. Shank*, 304 Kan. 89, 92-93, 369 P.3d 322 (2016).

In addition, Robison argues that "while the State put on evidence of value— $2,648.56—it failed to put on any evidence that a *loss* of that value occurred." Yet Robison does not suggest the insurance carrier's losses were less than the $2,648.56 the district court ordered. We also find nothing in the record to suggest that the insurance carrier received a windfall when the district court ordered that it be reimbursed for the amount it had paid to cover the officer's medical bills, and it is undisputed that these bills resulted from the treatment the officer received after being injured by Robison. Thus, we find that the district court did not abuse its discretion in ordering Robison to pay $2,648.56 in restitution to the workers compensation insurance carrier.

18

Finally, Robison briefly argues that the insurance company had to make the claim before the district court could order it to be reimbursed for the amount of medical expenses paid on behalf of Corporal Cutright. Again, we exercise unlimited review over this legal question because it involves the interpretation of the restitution statutes. *Dexter*, 276 Kan. 909, Syl. ¶ 2. Moreover, we note that two panels of this court have rejected similar arguments because the restitution statutes do not require the person or entity incurring the damage or loss to request restitution. Instead, the State can make the request for the aggrieved party. See *Jones*, 2019 WL 2554115, at *2; *State v. Jones*, No. 106,750, 2012 WL 4121119, at *4 (Kan. App. 2012) (unpublished opinion). We are persuaded by the analysis in those opinions. Consequently, we conclude that Robison's argument fails for the same reason, and we find that the district court's restitution judgment should be affirmed.

Affirmed.

* * *

LEBEN, J., dissenting: We treasure and zealously protect our right to a jury trial. It's enshrined for both civil and criminal cases in our state and federal constitutions. Yet there's a big loophole in the protection of those rights—and that loophole is the restitution order in a criminal case.

These orders are often made in an almost perfunctory hearing after the defendant has, in all other respects, been fully sentenced. Prosecutors and defendants alike often focus on the big-picture issues: Should the defendant plead guilty? Can some charges be dismissed or reduced? How much time will the defendant have to serve in jail? In many cases, restitution is addressed only after those questions have been answered. And for an indigent defendant, it may not seem like an important issue at the time—the defendant who's going to prison won't be making any payments any time soon, anyway.

19

But constitutional rights don't go away just because we're not paying attention to them. Courts and judges still have a duty to protect them; if a defendant is to waive a constitutional right, we must first tell the defendant about it.

In the case before us today, Robert James Robison III pleaded no contest to battery of a law enforcement officer. At sentencing, with no jury proceedings, a judge found that Robison's crime had caused $2,548.56 in damages to an insurance company and ordered that Robison pay restitution in that amount. Neither the document initially filed to charge Robison with the crime nor the plea agreement he and the prosecutor entered into mentioned those damages.

One could argue that there's not much at stake here, only a little over $2,500. But that's not relevant when a restitution award is entered as part of a criminal sentence (and many restitution awards are much larger). Robison says that the Sixth Amendment to the United States Constitution, which requires juries in criminal cases, provides him a right to have a jury decide restitution. Text, history, and precedent convince me that it does. And if not, then Section 5 of the Kansas Constitution Bill of Rights does. Because Robison had a right to have a jury decide restitution, I would vacate the restitution award against him.

*The Sixth Amendment Claim*

The Sixth Amendment provides a right to a jury trial in all criminal prosecutions. The rule from *Apprendi v. New Jersey* enforces that right: "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Robison contends that the Kansas restitution statutes, K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2), violate that rule. As I'll explain, there are several steps involved in the analysis, but my colleagues disagree with

20

Robison for two reasons: (1) that restitution isn't punishment and (2) that the statutes don't increase the statutory maximum or statutory minimum sentence for Robison's crime. I will address those reasons in order, covering the applicable Sixth Amendment principles along the way.

*The Sixth Amendment applies to restitution orders, so we must apply* Apprendi.

The claim that restitution is nonpunitive—and thus not covered by the Sixth Amendment—is undercut by text, history, and precedent. The text of the Sixth Amendment provides a right to a jury trial "[i]n all criminal prosecutions." So we must determine whether restitution is part of the "criminal prosecution."

Restitution is imposed after a criminal conviction and is part of the defendant's sentence. *State v. McDaniel*, 292 Kan. 443, 446, 254 P.3d 534 (2011). Its purposes include deterring future crime and rehabilitating the defendant. *State v. Applegate*, 266 Kan. 1072, Syl. ¶ 2, 976 P.2d 936 (1999). Those are punitive objectives; they are two of the rationales the government may use to justify a form of punishment under the Cruel and Unusual Punishment Clause of the Eighth Amendment of the United States Constitution. *Hall v. Florida*, 572 U.S. 701, 708, 134 S. Ct. 1986, 188 L. Ed. 2d 1007 (2014). And the United States Supreme Court often describes restitution awarded under federal statutes as a form of punishment. *Paroline v. United States*, 572 U.S. 434, 456, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014) (collecting cases). Those statutes "implicate[] 'the prosecutorial powers of government.'" 572 U.S. at 456. Nothing about restitution under our Kansas statutes justifies treating it any differently. Restitution implicates the Sixth Amendment because it is part of the defendant's "criminal prosecution."

That conclusion is unaffected by the observation that restitution also provides compensation for crime victims. It's true that one purpose restitution serves is to compensate victims for damage caused by the crime. But it also serves punitive purposes

21

of deterrence and rehabilitation. *Applegate*, 266 Kan. 1072, Syl. ¶ 2. And it is part of the defendant's sentence after a criminal conviction. Restitution's compensatory purpose doesn't erase these punitive attributes.

They exist no matter how creatively courts like ours describe restitution. The majority prefers to call restitution "a form of restorative justice," slip op. at 11, a name used in only one other Kansas case to describe restitution. *State v. Brown*, No. 120,590, 2020 WL 1897361, at *9 (Kan. App. 2020) (unpublished opinion). Yet in the very same paragraph, the majority cites a dictionary definition and a case that acknowledge restitution's criminal characteristics. However labelled, restitution's criminal characteristics make it a part of the defendant's criminal prosecution.

The nonpunishment view is even harder to defend when you consider the size of restitution awards and the consequences of not paying them. A search of federal cases returns decisions from every circuit upholding multi-million-dollar restitution awards. E.g., *United States v. Bikundi*, 926 F.3d 761, 790-92 (D.C. Cir. 2019) ($80.6 million); *United States v. Moreland*, 622 F.3d 1147, 1170-73 (9th Cir. 2010) ($36 million); *United States v. Lewis*, 557 F.3d 601, 615 (8th Cir. 2009) ($39 million). A similar search of Kansas cases produces awards in the hundreds of thousands of dollars. *State v. McAnally*, No. 119,133, 2019 WL 3367902 (Kan. App. 2019) (unpublished opinion) ($789,282); *State v. Crowell*, No. 116,841, 2018 WL 1352534 (Kan. App.) (unpublished opinion) ($202,552), *rev. denied* 308 Kan. 1597 (2018); *State v. Huff*, 50 Kan. App. 2d 1094, 1096, 1104, 336 P.3d 897 (2014) ($105,000).

Keep in mind that if any of the victims who received restitution in those cases had sued for civil damages, a jury-trial right would have kicked in. The defendants in that civil case could invoke their right to have a jury decide whether their actions caused damages, and if so, how much. Kan. Const. Bill of Rights § 5; K.S.A. 2017 Supp. 60-238; *State v. Love*, 305 Kan. 716, 735-36, 387 P.3d 820 (2017). Not so in a criminal case,

where the State can obtain a jury-free damages award for the victim—and that restitution award is  enforceable as a civil judgment too. K.S.A. 2017 Supp. 21-6604(b)(2); K.S.A. 2017 Supp. 60-2401.

The lack of a jury-trial right in a criminal case is even more anomalous when you realize that the consequences of not paying criminal restitution are more severe than not paying a civil judgment. For many felonies, the district court can indefinitely extend probation until restitution is fully paid. K.S.A. 2017 Supp. 21-6608(c)(7). The court can even do so without holding a hearing. *State v. Gordon*, 275 Kan. 393, 406-07, 66 P.3d 903 (2003). So the defendant could end up on probation for years, subject to having the underlying prison sentence imposed for all manner of potential violations. And with the felony sentence still in place through continued probation, the felony defendant also would be denied the right to vote, hold public office, and serve on a jury. K.S.A. 2017 Supp. 21-6613(a)-(b). These consequences, with plenty of punitive attributes, show that restitution is part of the "criminal prosecution" to which the Sixth Amendment jury-trial right attaches.

So does history, the touchstone of any *Apprendi* analysis. That analysis is "informed by the historical role of the jury at common law." *Oregon v. Ice*, 555 U.S. 160, 170, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). So we must consider "whether the finding of a particular fact was understood as within 'the domain of the jury . . . by those who framed the Bill of Rights.'" 555 U.S. at 168.

Most judges and lawyers are not historians by training; I'm in that group. So there's always a risk that we'll misread history in some way. Here, though, the historical role of juries in finding restitution seems pretty well established. The earliest examples of restitution in England required jury findings. In a victim-initiated prosecution called an appeal of felony, a larceny victim could retake stolen property by identifying it in the complaint and having the jury determine who owned it. Note, *Guarding the Rights of the*

23

*Accused and Accuser: The Jury's Role in Awarding Criminal Restitution Under the Sixth Amendment*, 51 Am. Crim. L. Rev. 463, 472 (2014). Larceny victims could likewise recover stolen property in an indictment of felony, a prosecution brought by the Crown, by filing a writ of restitution that listed the property in the indictment. 51 Am. Crim. L. Rev. at 473-74; *State v. Ragland*, 171 Kan. 530, 233 P.2d 740 (1951). American courts and colonial statutes followed the English tradition, allowing restitution for theft offenses only if the stolen property was described in the indictment and the jury made a special finding. 51 Am. Crim. L. Rev. at 474-75. The claim that the Sixth Amendment doesn't apply to restitution conflicts with this historical evidence.

It also conflicts with precedent. In *Southern Union Co. v. United States*, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), the United States Supreme Court applied *Apprendi* to criminal fines. It did so because criminal fines are no different from other punishments subject to the Sixth Amendment:

> "*Apprendi*'s 'core concern' is to reserve to the jury 'the determination of facts that warrant punishment for a specific statutory offense.' That concern applies whether the sentence is a criminal fine or imprisonment or death. Criminal fines, like these other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses. . . . In stating *Apprendi*'s rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines. [Citations omitted.]" 567 U.S. at 349-50.

In short, the *Apprendi* rule applied to criminal fines because they were indistinguishable from other punishments subject to the rule.

So too with restitution. Like a criminal fine, restitution is a penalty inflicted by the government for committing an offense. There is no meaningful difference between fines and restitution that would justify the Sixth Amendment applying to one and not the other.

24

To be sure, you pay them to different actors—restitution to a victim, fines to the government. But that's a distinction without a constitutional difference, as the United States Supreme Court recognized in *Paroline*.

The *Paroline* Court rejected an interpretation of a federal restitution statute that, among other things, potentially violated the Eighth Amendment's Excessive Fines Clause. 572 U.S. at 455-56. That was the case, the Court explained, because although restitution is paid to a victim, the government may impose it only after a criminal conviction. So despite the difference in who receives payment, the Excessive Fines Clause still potentially applied to restitution because, like a fine, it "implicates 'the prosecutorial powers of government." 572 U.S. at 456. Thus, who receives payment is an insufficient basis for treating restitution and fines differently under the Sixth Amendment.

To recap, the text of the Sixth Amendment, history, and precedent support a holding that the Sixth Amendment—and thus the *Apprendi* rule—applies to restitution. I must concede, though, that the majority cites a slew of federal and state cases rejecting the claim that *Apprendi* applies to restitution. Three things stand out about these cases, and they lead me to conclude that the cases have limited precedential value.

First, the cases reject *Apprendi*-based restitution claims for different reasons, and those reasons aren't very consistent. Some do so because restitution isn't punishment at all. Others do so because it doesn't increase the statutory maximum or minimum. Still others rely on both rationales. And while courts uniformly hold that restitution statutes don't violate *Apprendi*, they are split on whether restitution is punishment—a pretty important matter in deciding whether the Sixth Amendment (and, with it, *Apprendi*) applies.

Take the Third and Sixth Circuits. Both agree that restitution is a form of punishment. *United States v. Leahy*, 438 F.3d 328, 335 (3d Cir. 2006) (en banc); *United*

25

*States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005). So do three states the majority mentions. *People v. Wall*, 3 Cal. 5th 1048, 1075-76, 224 Cal. Rptr. 3d 861, 404 P.3d 1209 (2017); *State v. Clapper*, 273 Neb. 750, 757, 732 N.W.2d 657 (2007); *State v. Kinneman*, 155 Wash. 2d 272, 277-81, 119 P.3d 350 (2005). In three others, the courts made no comment on whether restitution is punishment. *State v. Deslaurier*, 277 Or. App. 288, 295, 371 P.3d 505 (2016); *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007); *State v. Foumai*, No. CAAP-17-0000093, 2018 WL 495679, at *4 (Haw. Ct. App. 2018) (unpublished opinion).

Then there are the courts that treat restitution as punishment in non-*Apprendi* contexts. Three federal circuits do that, describing restitution as "part of a criminal penalty," *United States v. Tull-Abreu*, 921 F.3d 294, 305 (1st Cir.), *cert. denied* 140 S. Ct. 424 (2019); having "compensatory and penal" goals, *United States v. Ritchie*, 858 F.3d 201, 214 (4th Cir. 2017); and "'penal, rather than compensatory,'" *United States v. Puentes*, 803 F.3d 597, 609 (11th Cir. 2015). At least two states, in cases not cited by the majority, similarly subscribe to the punitive view of restitution when no *Apprendi* issues are being argued. *State v. Kealoha*, 142 Haw. 46, 50, 414 P.3d 98 (2018); *In re Cody H.*, 452 Md. 169, 183, 156 A.3d 823 (2017).

Second, many of the cases are outdated in light of later caselaw developments. Nine of them were decided six or more years before the Court's *Southern Union* opinion. *Dohrmann v. United States*, 442 F.3d 1279 (11th Cir. 2006); *Leahy*, 438 F.3d 328; *United States v. Carruth*, 418 F.3d 900 (8th Cir. 2005); *United States v. George*, 403 F.3d 470 (7th Cir. 2005); *Smith*, 181 P.3d at 327; *Clapper*, 273 Neb. at 757; *State v. Martinez*, 392 N.J. Super. 307, 315-18, 920 A.2d 715 (2007); *People v. Horne*, 97 N.Y.2d 404, 414-15, 740 N.Y.S.2d 675, 767 N.E.2d 132 (2002); *Kinneman*, 155 Wash. 2d at 277-81. So they don't account for the closely analogous application of the *Apprendi* rule to criminal fines in *Southern Union*.

Third, even the newer cases that do address *Southern Union* make little effort to distinguish it—or to explain *why* restitution isn't punishment. Like the rest, they mostly cite to other cases in which their court or another had already classified restitution as nonpunitive.

Rather than follow their lead, we should analyze the issue anew and recognize that restitution is part of the "criminal prosecution." Courts award it in a criminal proceeding as part of a criminal sentence. Imposing it serves punitive aims and not paying it has punitive consequences. For those reasons, the Sixth Amendment applies to restitution awards. So we must apply *Apprendi*.

*The Kansas restitution scheme violates the* Apprendi *rule*.

Now we must figure out whether the Kansas restitution statutes violate the *Apprendi* rule. The majority says they don't because these statutes increase neither the statutory maximum nor statutory minimum sentence. Although I agree that the statutes don't increase the statutory minimum, I would hold that they increase the statutory maximum.

The meaning of that phrase is clear from the United States Supreme Court's *Apprendi* cases. In *Blakely v. Washington*, the Court provided a simple definition of the term that's worth repeating here:

> "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [a judge] may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes

27

essential to the punishment[.] . . .' [Citations omitted.]" *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

So the statutory maximum is the most punishment that a judge could impose *without more findings*. The Court continues to apply that definition in its *Apprendi* cases. *Southern Union*, 567 U.S. at 348.

Under *Blakely*, then, the Kansas restitution scheme increases the statutory maximum. Unless the jury found that the defendant's crime caused the specific damages or the defendant stipulated to them in the plea deal, the most restitution that a judge could award is zero. Yet K.S.A. 2017 Supp. 21-6604(b)(1) and 21-6607(c)(2) allow judges to award amounts way more than zero in restitution if the judge finds that the crime caused "damage or loss."

Consider Robison's case. The indictment didn't allege that his crime caused any damage or loss to the insurance company. Nor did the plea agreement. So when the judge made a damages finding at sentencing, he ordered more restitution than was authorized by the plea agreement alone.

The majority counters that there is no statutory maximum for restitution (so our statutes couldn't impermissibly increase the maximum). Slip op. at 14-15. The argument goes like this: the maximum value of awardable restitution is indeterminate because it will vary from case to case based on the damage or loss caused by a crime; so unlike criminal fines with fixed dollar amounts, there is no statutory maximum for restitution. But *Southern Union* forecloses this argument.

Recall that *Southern Union* extended *Apprendi* to criminal fines. The statutorily authorized fine in that case was up to $50,000 for each day a company had violated a federal environmental statute. The judge-found fact that impermissibly increased the

28

statutory maximum in *Southern Union* was the length of the violation. Yet the Court made clear that its holding would apply to any fact used to calculate a fine, including "the amount of the defendant's gain or the victim's loss." 567 U.S. at 349-50. Whatever fact is used, juries must "[i]n all such cases, . . . find beyond a reasonable doubt facts that determine the fine's maximum amount." 567 U.S. at 350.

By the majority's logic, *Southern Union* was wrongly decided. The maximum fine in that case was not a fixed number. The fine was up to $50,000 for *each day* that the company had violated the environmental statute. The $50,000 number is not the statutory maximum; it's a variable the court multiplies by the length of the violation. Just as two crimes may not cause the same amount of damage or loss, two companies may not violate an environmental statute for the same number of days. So the statutory maximum for the fine is indeterminate. If there is no statutory maximum for indeterminate penalties, as the majority suggests, then *Southern Union* should have come out the other way. It didn't, of course, because no part of the Court's decision imposed the fixed-amount requirement read into the decision by the majority here.

The majority's reasoning would also mean that fines calculated using the amount of the defendant's gain or the victim's loss would be exempt from the *Apprendi* rule. Remember that *Southern Union* said that the rule applies to those fines. 567 U.S. at 349-50. But like a damage-or-loss figure for restitution, those fines have no constant maximum because the amount gained by the defendant or lost by the victim from the crime is variable. And if variable penalties have no statutory maximum, then under the majority's reasoning, the *Apprendi* rule shouldn't apply to those fines. Yet we know that's not right because *Southern Union* specifically identified those fines as an example of the kind of penalty to which the Court's holding applied. 567 U.S. at 349-50.

And if *Apprendi* applies to a fine that's calculated based on the victim's loss, it should apply to restitution calculated on that same basis. In both cases, a judge-found fact

increases the punishment the judge could impose beyond the amount authorized by the jury verdict or the plea agreement alone. It doesn't matter that the specific dollar amount of restitution will differ from case to case because the fact that's used to calculate that amount will always be the same: the amount of damage or loss found to have been caused by the defendant's crime.

The majority recognizes that "some legal scholars believe," based on *Southern Union*, that the Sixth Amendment jury-trial right must also apply to restitution. Slip op. at 13. But that view goes well beyond the legal academy. Two United States Supreme Court justices, including the author of *Southern Union*'s majority opinion, have expressed support for the view that there's a right to a jury trial on restitution. *Hester v. United States*, 586 U.S. __, 139 S. Ct. 509, 510, 202 L. Ed. 2d 627 (2019) (Gorsuch, J., joined by Sotomayor, J., dissenting from cert. denial). And years before *Southern Union*, several federal circuit judges—and one state supreme court justice—would have held that restitution statutes violate *Apprendi*. *Leahy*, 438 F.3d at 343-44 (McKee, J., concurring in part and dissenting in part) (joined by four judges); *Carruth*, 418 F.3d at 905-06 (Bye, J., dissenting); *Clapper*, 273 Neb. at 750 (Connolly, J., dissenting). Academics also support this position, including the leading treatise on criminal procedure. 6 LaFave, Israel, King & Kerr, Criminal Procedure, § 26.6(c) (4th ed. 2019).

Before moving to Robison's Section 5 claim, one last point is worth mentioning. The majority notes that under our state's restitution statutes, a judge may award less than the amount of "damage or loss" caused by the defendant's crime. Slip op. at 11-12, 16. That's because a judge can reduce the restitution award from the total loss if "the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2017 Supp. 21-6604(b)(1); K.S.A. 2017 Supp. 21-6607(c)(2).

I agree with that interpretation, but it in no way affects my conclusion about the statutory maximum. If the judge awards any restitution, the statutory maximum has still

30

increased from zero to more than zero. The only way the compelling-circumstances language could cure the *Apprendi* violation would be if the judge found that compelling circumstances justified awarding *no* restitution. Only then would the statutory maximum stay at zero. And the maximum didn't stay at zero in Robison's case; the court didn't apply that exception and instead ordered Robison to pay the full damage-or-loss value.

In sum, the two Kansas statutory provisions dealing with restitution—K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2)—violate the *Apprendi* rule by allowing judges to increase the statutory maximum punishment for an offense beyond that authorized by the jury's verdict or the plea agreement. The district court, relying on those provisions, found that Robison's crime caused damages to an insurance company and ordered him to pay restitution in that amount. Because that violated Robison's Sixth Amendment jury-trial right, I would vacate the restitution portion of Robison's sentence.

I would not apply the harmless-error rule because the State doesn't raise it. And even if it had, the error could not have been harmless here because no Kansas law currently provides a procedure for empaneling a jury to decide restitution. See *Washington v. Recuenco*, 548 U.S. 212, 217-18, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); *State v. Horn*, 291 Kan. 1, 10, 238 P.3d 238 (2010); *State v. Kessler*, 276 Kan. 202, Syl. ¶ 8, 73 P.3d 761 (2003).

*The Section 5 Claim*

Robison's jury-trial right can come either from the federal constitution or its Kansas counterpart. Even if Robison had no jury-trial right under the Sixth Amendment, I would hold that he had one under Section 5 of the Kansas Constitution Bill of Rights. As the majority notes, Section 5 protects the jury-trial right as it existed in 1859 when Kansas ratified its Constitution. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132, 442 P.3d 509 (2019) (plurality opinion); *Wheeler v. Caldwell*, 68 Kan. 776, 780, 75 P. 1031

31

(1904); *Ross v. Crawford County Comm'rs*, 16 Kan. 411, 418 (1876). If juries decided a factual issue in 1859, then a statute that allows judges to decide the issue violates Section 5. *Hillburn*, 309 Kan. at 1133-34.

No one disputes that if Robison had a jury-trial right under Section 5, the restitution statutes deprived him of that right by allowing a judge to decide the facts needed to support his restitution award. The issue is whether juries would have decided those facts in 1859. Robison argues they would have for two reasons. First, he analogizes restitution to causation and damages in a civil case, issues decided by Kansas juries at statehood. Second, he cites Kansas Territorial Statutes that purportedly show that juries also decided restitution in 1859.

The majority rejects Robison's civil-claim analogy by emphasizing restitution's criminal attributes. Criminal restitution and civil damages, the majority explains, are separate remedies under Kansas law. After all, a victim can still recover civil damages after a judge awards restitution, and a judge can still award restitution after the victim has recovered civil damages. These differences convince the majority that restitution should not be treated as civil damages under Section 5.

For the majority, restitution is something of a Goldilocks remedy—not too punitive to trigger the Sixth Amendment, not too compensatory to trigger Section 5. No, the majority says, it's just right.

On the Sixth Amendment claim, the majority says restitution is victim compensation, not punishment. It describes restitution with language that courts use to describe damages in a civil case. Compare slip op. at 11 ("[Restitution] is intended to restore the victims . . . to the position they found themselves in prior to a defendant's commission of the offense that caused the injury or damage."), with *Burnette v. Eubanks*, 308 Kan. 838, Syl. ¶ 4, 425 P.3d 343 (2018) ("The purpose in awarding damages is to

32

make a party whole by restoring that party to the position the party was in prior to the injury."). Now on the Section 5 claim, the majority plays up restitution's criminal characteristics.

In theory, perhaps some monetary award could be just right, neither fish nor fowl, and avoid scrutiny under both the Sixth Amendment and Section 5. But that can't be the case here. If we focus on restitution as compensation for loss, not punishment, we know that a victim can enforce a restitution award just like a civil judgment. K.S.A. 2017 Supp. 21-6604(b)(2); K.S.A. 60-2401. And although a restitution award will not bar the victim from later seeking civil damages, it will reduce the victim's recovery in the civil case by "the amount of any restitution paid." K.S.A. 60-4304(b); *Applegate*, 266 Kan. at 1078-79. So even if restitution is somehow treated as nonpunitive, it still works just like causation and damages in a civil case. Because juries decided those issues in Kansas in 1859, the restitution statutes necessarily infringe on Section 5's right to jury trial by allowing judges to decide those issues.

Similarly, if we focus on the punishment side instead of compensation for loss, there's more to Section 5 than its application to the recovery of civil damages or their equivalent: the Kansas Supreme Court has made clear that Section 5 applies in criminal cases too. *Love*, 305 Kan. at 736. For example, it's well-established that juries must decide guilt in a criminal case, though they need not decide legal issues like whether to instruct a jury on a lesser-included offense or whether one offense is a lesser-included offense of another. 305 Kan. at 736. Here, whether a defendant's crime caused damage or loss to a victim is an issue of fact. *Hall*, 297 Kan. at 712. The question, then, is whether juries would have had to find that fact in 1859.

In 1859, juries in criminal cases involving theft offenses had to make a factual finding about the value of the stolen property. Kan. Terr. Stat. 1859, ch. 27, §219; ch. 28, §§ 72-74, 82-88, 91. The jury's property valuation affected the severity of the defendant's

33

punishment—the punishments were more severe for property worth $20 or more (grand larceny) than for property worth less than $20 (petty larceny). Kan. Terr. Stat. 1859, ch. 28, §§ 72-74. Once the jury had valued the property, the judge could impose a punishment authorized for that type of larceny (unless the jury had specified a punishment in the verdict). Kan. Terr. Stat. 1859, ch. 27, §§ 219-221.

The property-valuation finding for theft offenses is equivalent to the damage-or-loss finding for restitution. As the majority puts it, the valuation "affected the severity level of the offense." Slip op. at 8. Juries had to determine how much the property was worth because that finding "affected the appropriate sentence to be imposed on the defendant." Slip op. at 9. So too with a damage-or-loss finding for restitution. That finding affects the severity of the defendant's sentence. If the crime caused no damage or loss, the judge cannot award any restitution; otherwise, the judge can award up to the full damage-or-loss amount. Because juries would have made the damage-or-loss finding in 1859, I would hold that Section 5 requires that they still make that finding today.

The majority concludes otherwise because Robison has not shown that juries decided restitution in 1859. That asks the wrong question. The key question isn't whether judges awarded restitution in Kansas in 1859, but whether juries would have found the facts needed to support a restitution award at that time. Juries, not judges, in 1859 would have decided whether the defendant's crime caused damage or loss to a victim. On that basis, I would hold that Robison had a right to a jury trial under Section 5.

In sum, Robison had a right to have a jury determine the amount of the damage or loss he caused to any victim of his crime. That right was not honored. I would vacate the restitution award.

34